IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 22, 2016 Session

**CIVIS BANK v. THE WILLOWS AT TWIN COVE MARINA
CONDOMINIUM AND HOME OWNERS ASSOCIATION, INC.**

**Appeal from the Chancery Court for Campbell County
No. 7CH1-2015-CV-15      Elizabeth C. Asbury, Chancellor**

**No. E2016-00140-COA-R3-CV-FILED-DECEMBER 28, 2016**

This case involves a residential development on Norris Lake in Campbell County called The Willows at Twin Cove Marina.  The Declaration of Covenants, Conditions and Restrictions for the development grants certain rights to the individual/entity described in the document as the "Declarant."  As pertinent to this case, those rights include an exemption from payment of maintenance assessments to the homeowner's association under certain circumstances.  The original owner of the development defaulted on construction loans, resulting in a foreclosure sale of certain portions of the development property and the personal property of the original owner.  Civis Bank, the successor owner of the property sold at foreclosure, brought this action asking the trial court to declare it to be the "Declarant," and thereby exempted from assessments levied by the defendant homeowner's association.  Both sides moved for summary judgment.  The trial court held that Civis did not meet the applicable definition of "Declarant" in the Declaration.  We agree.  Accordingly, we affirm the court's grant of summary judgment to the homeowners' association.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Wilson S. Ritchie and Rachel King Powell, Knoxville, Tennessee, for appellant, Civis Bank.

Walter N. Winchester and Joshua R. Holden, Knoxville, Tennessee, for appellee, The Wilows at Twin Cove Marina Condominium and Home Owners Association, Inc.

**OPINION**

**I.**

In 2004, Twin Cove Acquisition Company, Inc. (TCAC) began development of "The Willows at Twin Cove Marina," consisting of certain non-contiguous tracts of real property on Norris Lake. The development included a marina, a residential subdivision, condominiums, a swimming pool, and a clubhouse. TCAC obtained financing from Civis Bank,[1] among other lenders. In 2004, TCAC executed a deed of trust and security agreement granting Civis a security interest in all of its real and personal property interests in the development.

On June 21, 2005, TCAC executed a "master deed and declaration of condominium regime for The Willows at Twin Cove Marina" (the Willows Master Deed). TCAC recorded the Willows Master Deed the following day. It defines TCAC as the "Condominium Project Developer" and the "Declarant." It also establishes "The Willows at Twin Cove Marina Condominium and Home Owners Association, Inc.," (the HOA), consisting of the owners of a unit or units within the condominium project. The Willows Master Deed authorizes the Board of Directors of the HOA to collect maintenance assessments. It provides that the "Condominium Project Developer shall not owe any maintenance fund assessments on any Unit that it is constructing, rehabilitating or restoring until a certificate of occupancy is available on that Unit." Shortly thereafter, TCAC executed a second deed of trust and security agreement in favor of Civis on June 27, 2005.

On February 13, 2007, Civis assigned the 2004 and 2005 deeds of trust and security agreements to BankEast. The same day, Civis purchased a 26.62% participation interest in a new loan from BankEast to TCAC. In connection with the new loan, TCAC executed an amended and restated deed of trust, security agreement, and assignment of rents and leases in favor of BankEast, which grants BankEast the following:

> all of the real property, interests in real property, estates, easements, rights, improvements, fixtures and appurtenances thereunto . . . TOGETHER with all personal property . . . of

---

[1] Civis Bank was formerly named Citizens Bank of East Tennessee, and operated under that name until it changed its name on December 15, 2013. The name change is not pertinent to any issue in this case, so we refer to the defendant bank as "Civis" throughout this opinion.

> every kind and nature whatsoever, now or hereafter located in, upon or under the Property or any part thereof and used or usable in connection with any present or future operation of the Property and now owned or hereafter acquired by [TCAC] . . . TOGETHER with all interest, estate or other claims, both in law and in equity, which [TCAC] now has or may hereafter acquire in the Property.

(Capitalization in original.) The real property of the development consisted of eight separate tracts, designated Tracts 1 through 8, all of which were encumbered by the 2007 deed of trust and security agreement.

On August 25, 2008, TCAC recorded a Declaration of Covenants, Conditions and Restrictions for the Willows at Twin Cove Marina (the Declaration of CCR). It contains the provision at the heart of the dispute between the parties, *i.e.*, the definition of the term "Declarant":

> "Declarant": Shall mean TWIN COVE ACQUISITION COMPANY, INC., the owner of the Properties submitted hereto, together with any successor in title who comes to stand in the relation to the Community as his predecessor. Notwithstanding the foregoing, the phrase "Owner" as referred to in this definition shall not include in its capacity as such any Mortgagee except for such Mortgagee who acquires said Declarant's entire interest with respect to the Properties . . . at the time of such acquisition pursuant to Foreclosure of a Mortgage encumbering said Declarant's interest in the Properties . . . and who then expressly assumes the position of Declarant.

(Capitalization in original.) Among the rights provided to the Declarant in the Declaration of CCR is an exemption from paying maintenance fund assessments under certain conditions:

> Declarant shall not be responsible or liable for the payment of assessments (whether General, Parcel, Special or Specific) in respect to Lots for which Declarant holds record title and which do not contain occupied Residential Units (except as hereinafter provided); provided that Declarant covenants and agrees to pay assessments in the same manner as Lots

3

conveyed to Owners for each Lot owned by Declarant containing an occupied Residential Unit.

TCAC eventually defaulted on its loan obligations to BankEast. It is undisputed that by the time of the default, BankEast had released certain tracts of real estate from the deeds of trust, including a portion of Tract 2, all of Tract 3, and other units in the condominiums and single family lots. BankEast foreclosed on the remaining collateral on January 13, 2012. At the foreclosure sale, BankEast was the high bidder, and became the owner via conveyance by Substitute Trustee's Deed executed on January 13, 2012, which conveys "the Property, . . . together with all of the hereditaments, improvements, buildings, easements and appurtenances thereon and thereunto belonging[.]" At the foreclosure sale, the Substitute Trustee also announced the sale of TCAC's personal property encumbered by the deeds of trust. BankEast also purchased the personal property, as reflected by a bill of sale executed by the substitute trustee, which states in pertinent part:

> Substitute Trustee, ("Seller") . . . does hereby grant, sell, transfer, and deliver unto BankEast, a Tennessee banking corporation, ("Buyer") the following:
>
> *       *       *
>
> All of [TCAC's] right, title and interest in . . . all of [TCAC's] accounts, contract rights, accounts receivable, inventory, leases, income, intangibles and rights to income with regard to the Premises, the improvements thereon and the Collateral, now owned or hereafter acquired and now due or which hereafter may become due, including all contract rights and general intangibles with regard to the operation of the project to be constructed on the Premises, specifically including, without limitation, all rights, title and interest of [TCAC] in, to and under all operating, management and maintenance agreements relating, directly or indirectly, to the aforesaid project and the Premises[.]

Shortly after the foreclosure sale, on January 27, 2012, the Tennessee Department of Financial Institutions closed BankEast and appointed the Federal Deposit Insurance Corporation (FDIC) as receiver. According to the affidavit of Ben Lindley, president and CEO of Civis, "[t]he FDIC, as Receiver, sold substantially all of the assets of BankEast to U.S. Bank, . . . including the [f]oreclosed [p]roperty." There is no other documentation in the record regarding the sale from the FDIC to U.S. Bank, so it is unclear what

4

"substantially all of the assets of BankEast" specifically included under the terms of the sale.

On February 1, 2012, the HOA began assessing homeowners' dues[2] on the property lots owned by U.S. Bank in the total amount of $1,350 per month. The assessments were for ten lots located on Tracts 2, 4, 6, 7, and 8. On March 21, 2013, the HOA filed a notice of lien for the assessments, claiming that the HOA had a lien for the unpaid and delinquent assessments.

On March 28, 2013, Civis purchased all of U.S. Bank's interest in the foreclosed property, as reflected in a note purchase and sale agreement, special warranty deed conveying the real property "with the appurtenances, estate, title and interest thereto," and bill of sale documenting the transfer of "all right, title and interest in and to the personal property," defined as including

> all of [U.S. Bank's] right, title and interest in and to the Loan Documents, together with any and all other security agreements, financing statements, assignments of leases, rents, or contracts, guaranties and all other loan documents and instruments evidencing or securing the Loan, and the real and personal property originally pledged as Collateral for the Loan, which was the subject of a foreclosure sale conducted by BankEast on January 13, 2012.

On June 10, 2013, TCAC executed a document styled "Assignment of Declarant Rights under Declaration of Covenants, Conditions and Restrictions and of Condominium Project Developer Rights Under Master Deed," in which it purported to assign certain rights to Twin Cove Resort and Marina, LLC, stating:

> [TCAC] has agreed to also assign any and all rights it has as Declarant under the [Declaration of] CCR and Condominium Project Developer under the Master Deed as to the real property [in The Willows at Twin Cove Marina development] to the extent [TCAC] still has any such rights.

---

[2] The complaint, other pleadings in the record, and the parties' briefs refer to these assessments as "homeowner's dues." Although that term does not appear to be included in the Willows Master Deed or the Declaration of CCR, those documents do authorize the HOA to issue monthly assessments to owners for common expenses of the association, including maintenance and repairs. We assume for the purposes of this opinion that the homeowner's dues are synonymous with such authorized monthly maintenance assessments.

5

On May 21, 2014, Civis executed a document styled "Second Amendment to Covenants, Conditions, and Restrictions for The Willows at Twin Cove Marina," which states in pertinent part:

> WHEREAS, on March 28, 2013, [Civis] purchased Willows Court [Tract 7] and The Pointe [Tract 8], and all rights, title and interest in Willows Court and The Pointe, including the rights of the "Declarant" as defined in the Declaration [of CCR], from U.S. Bank National Association; and
>
> \* \* \*
>
> WHEREAS, pursuant to Section 7.5 of the Declaration, Declarant has the right to amend the Declaration for the purpose of removing certain portions of the Property owned by the Declarant from the provisions of the Declaration as a result of any changes whatsoever in the plans for the Community desired to be effected by the Declarant; and
>
> WHEREAS, Civis, by virtue of its authority as Declarant, has changed its plans for the Community such that Willows Court and The Pointe should not be included in the Community;
>
> NOW THEREFORE, for and in consideration of the premises, and by virtue of its authority as Declarant, Civis Bank does hereby remove "The Willows Court" . . . and "The Pointe" . . . from the provisions of the Declaration.

(Capitalization in original.) The same day, Civis also executed a document stating "by virtue of its authority as Declarant, Civis Bank does hereby terminate, revoke and cancel the Declaration [of CCR] in its entirety, and the Declaration null, void and of no force or effect whatsoever" as it pertained to Tract 7, known as Willows Court. Civis recorded these documents a week later, on May 27, 2014.

On February 5, 2015, Civis filed its complaint, asking the trial court to declare that (1) any rights held by TCAC under the Willows Master Deed and Declaration of CCR passed to Civis through foreclosure and subsequent conveyances; (2) the lien asserted by the HOA for delinquent assessments of homeowners' dues is invalid; and (3) that the HOA has no authority to make such assessments against Civis Bank. The HOA filed an answer and counterclaim, arguing that Civis is not the Declarant under the terms of the governing documents and alleging that Civis was liable for past due maintenance

assessments in the amount of $51,300 plus accrued interest and late fee charges. The HOA further asked the trial court to declare that Civis had no authority to execute and record the Second Amendment to Covenants, Conditions, and Restrictions for The Willows at Twin Cove Marina and the Termination of the Declaration of CCR for the Willows Court portion of the development.

Following discovery, both sides moved for summary judgment. The parties generally agreed that there are no material facts in dispute. The trial court, construing the definition of "Declarant" in the Declaration of CCR, held that Civis could not establish that it was the Declarant for several reasons, including its findings that Civis never "expressly assum[ed] the position of Declarant," and that "Civis Bank cannot be considered the Declarant since [TCAC] conveyed/assigned Declarant's Rights to Twin Cove Resort and Marina, LLC." The trial court further stated,

> According to the definition "Declarant" would only include a mortgagee who acquired Declarant's interest with respect to all of the property. Without dispute there have been foreclosure proceedings by other lending institutions for properties located within the development. These "owners" appear to be bankers/lenders. They are not engaged in development of property of this nature. [Civis] did not dispute that "Civis is a banking institution and not primarily engaged in developing Condominiums."

The trial court granted the HOA a judgment in the amount of $68,113.41, and declared the "Termination of Declaration of Covenants, Conditions, Restrictions and Easements for the planned development section of The Willows Court at Twin Cove Marina," and the "Second Amendment to Covenants, Conditions and Restrictions for The Willows at Twin Cove Marina," invalid and of no force and effect. Civis timely filed a notice of appeal.

## II.

The issue presented by Civis is whether the trial court erred in its conclusion that Civis is not the Declarant under the terms of the governing contracts and thereby exempt from the HOA's assessments of monthly homeowner's fees, and thus, whether the trial court should have granted Civis, rather than the HOA, summary judgment.

7

## III.

We review a grant of summary judgment in accordance with the following standard, as stated by the Supreme Court:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness.
>
> \* \* \*
>
> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015) (italics in original).

In this case, the material facts are undisputed, and the issue before us involves a question of law, the construction and interpretation of contractual provisions.

## IV.

The issue before us involves the transfer of Declarant's rights under a master deed and declaration of covenants, conditions and restrictions for a residential development. These rights are typically held and exercised by a real estate developer, and can be encumbered under a mortgage or deed of trust held by a lender who finances such a development. The Supreme Court addressed the issue of whether such rights were

8

transferred in a sale from the initial property developer to a successor developer in ***Hughes v. New Life Dev. Corp.***, 387 S.W.3d 453, 465-67 (Tenn. 2012), stating:

> In our view, the language of the Purchase and Sale Agreement clearly evidences the parties' intent that New Life acquire Raoul Land Development's rights and interests as the "Developer" of Cooley's Rift. We need look no further than the Work Product Documents that were sold by virtue of the Purchase and Sale Agreement. These documents are obviously related to development activity . . . The Work Product Documents even directly reference residential subdivision development. Additionally, the Purchase and Sale Agreement includes the sale of "the name 'Cooley's Rift' and all derivations thereof." These items are consistent with more than simply acquiring ownership of real property in Cooley's Rift. Instead, this language amply reflects the parties' mutual intent that New Life succeed to Raoul Land Development's position as the Developer.

> \*     \*     \*

> The deed in this case exhibits no different intent from the Purchase and Sale Agreement with respect to Raoul Land Development's transfer of its rights and interests as the Developer to New Life. The deed identifies the real property at issue and conveys it "with the appurtenances, estate, title and interest thereto." Not surprisingly, the deed does not reference the Work Product Documents. At its core, a deed is simply "a written instrument by which land is conveyed." Black's Law Dictionary 475 (9th ed. 2009).

> The Work Product Documents do not represent an estate or interest in land. In fact, the rights and interests of the Developer, as they are referred to in this case, ultimately concern rights of governance under the Association's Charter and Bylaws and do not represent an estate or interest in land. However, the deed does contain some limited language consistent with the transfer of rights and interests as the Developer evidenced by the Purchase and Sale Agreement.

> \*     \*     \*

9

From our review of the language of the Purchase and Sale Agreement and the parties' actions in carrying out that contract, as it pertains to the real property through execution of the deed, we conclude that it was the intent of the parties that New Life acquire Raoul Land Development's rights and interests as the Developer of Cooley's Rift.

As a final matter, the Homeowners, citing cases from Illinois, South Carolina, and Vermont, argue that Raoul Land Development's rights and interests as the Developer were personal and did not run with the land, and thus there must be evidence of a specific intent on the part of Raoul Land Development to convey the rights and interests. This argument misses the point. The circumstances described above do indeed reflect an intent on the part of Raoul Land Development to transfer its rights and interests, including its rights and interests as the Developer, to New Life.

(Footnotes omitted.) We glean two pertinent points from the *Hughes* decision. First, contrary to the HOA's argument in this case, developer's or declarant's rights can be transferred by general language. Specific and precise language describing what property is to be conveyed is preferable and potentially more effective. But *Hughes* teaches that a general transfer of, for instance, "all personal property" or "all contract rights" can be effective to transfer declarant's rights, provided the intent to make such a transfer is evident from an examination of the pertinent documents and the conduct of the parties. The HOA's argument that Civis cannot be the Declarant in this case because the documents establishing the chain of title transferring ownership of the property at issue do not specifically mention "declarant's rights" is unpersuasive.

Second, the Supreme Court in *Hughes* strongly suggests that as a general matter, declarant's or developer's rights are personal interests, which, although freely transferable, do not run with the land. *Id.* at 466-67. Several courts in other jurisdictions have expressly reached such a conclusion. *See **Larkin v. City of Burlington***, 772 A.2d 553, 557 (Vt. 2001); ***Woodglen Estates Ass'n v. Dulaney***, 359 S.W.3d 508, 513 (Mo. Ct. App. 2012). In the present case, the language of the Declaration of CCR suggests that the parties did not intend the rights of the Declarant to automatically run with the land. It states:

Transfer or Assignment. Any or all of the special rights and obligations of the Declarant set forth in the Governing

Documents may be transferred or assigned in whole or in part to the Association or to other Persons, provided that the transfer shall not reduce an obligation nor enlarge a right beyond that which the Declarant has under this Declaration or the By-Laws. . . . No such transfer or assignment shall be effective unless it is in a written instrument signed by the Declarant and duly recorded in the Public Records.

\* \* \*

Grants. The parties hereby declare that this Declaration, *and the easements created herein shall be and constitute covenants running with the fee simple estate* of the Properties. The grants of easements in this Declaration are independent of any covenants and contractual agreements undertaken by the parties in this Declaration and a breach by either party of any such covenants or contractual agreements shall not cause or result in a forfeiture or reversion of the easements granted in this Declaration.

(Emphasis added.) Further, the definition of "Declarant" anticipates that a successor owner will have Declarant's rights only under certain circumstances, as further discussed below.

The trial court ruled that TCAC assigned the rights of Declarant after the foreclosure sale, stating:

On June 10, 2013 [TCAC] assigned the rights of Declarant and Condominium Project Developer to Twin Cove Resort and Marina, LLC. This document is a clear, unambiguous, assignment of Declarant's rights of the original developer to Twin Cove Resort and Marina, LLC.

\* \* \*

. . . Civis Bank cannot be considered the Declarant since [TCAC] conveyed/assigned Declarant's rights to Twin Cove Resort and Marina, LLC.

We disagree with this ruling by the trial court. The document referred to in the quoted material clearly states that TCAC "has agreed to also assign any and all rights it has as

Declarant . . . *to the extent* [*TCAC*] *still has any such rights*." (Emphasis added.) This document was executed after TCAC's default and the foreclosure sale. At the foreclosure sale, all of TCAC's real and personal interests in the development were sold. There is nothing in the record indicating that TCAC retained any interest in the property at issue after the foreclosure sale. Consequently, it had no rights to assign to Twin Cove Resort and Marina, LLC on June 10, 2013, roughly 18 months after the foreclosure sale.

We return to the definition of "Declarant," which the parties agree is central to the disposition of the issue:

> "Declarant": Shall mean TWIN COVE ACQUISITION COMPANY, INC., the owner of the Properties submitted hereto, together with any successor in title who comes to stand in the relation to the Community as his predecessor. Notwithstanding the foregoing, the phrase "Owner" as referred to in this definition shall not include in its capacity as such any Mortgagee except for such Mortgagee who acquires said Declarant's entire interest with respect to the Properties . . . at the time of such acquisition pursuant to Foreclosure of a Mortgage encumbering said Declarant's interest in the Properties . . . and who then expressly assumes the position of Declarant.

The trial court found that Civis did not "expressly assume[] the position of Declarant." We also disagree with this particular finding of the trial court. In the two documents executed on May 21 and recorded on May 27, 2014, the "Second Amendment to Covenants, Conditions, and Restrictions for The Willows at Twin Cove Marina," and the "Termination of Declaration of Covenants, Conditions, Restrictions and Easements for the Planned Development Section of the Willows Court at Twin Cove Marina," Civis expressly states that it is acting "by virtue of its authority as Declarant." Contrary to the trial court's finding, we hold that under these undisputed facts, Civis expressly assumed the position of Declarant.

The definition of "Declarant" excludes a "Mortgagee" from being an "Owner" or the "Declarant," "except for such Mortgagee *who acquires said Declarant's entire interest with respect to the Properties . . . at the time of such acquisition pursuant to Foreclosure* of a Mortgage encumbering said Declarant's interest in the Properties." (Emphasis added.) "Mortgagee" is defined as "the grantor, holder or beneficiary of a Mortgage," which is further defined as "a deed to secure debt, deed of trust, as well as a Mortgage." There is no doubt that the involvement of both Civis Bank and BankEast with the development property was as a mortgagee. As already noted, it is undisputed

that by the time of the default and foreclosure sale, BankEast had released certain tracts of real estate from the deeds of trust. The following statements contained in Civis' response to the HOA's Rule 56.03 statement of material facts are undisputed:

> That U.S. Bank, BankEast and [Civis] were not the only bank[s] that loaned funds to [TCAC] and took as collateral real property within the HOA.
>
> That U.S. Bank, BankEast and [Civis] were not the only lender[s] to foreclose on its collateral in the Willows at Twin Cove.
>
> *At foreclosure, BankEast did not acquire TCAC's "entire interest" as that phrase is used in Willows [Declaration of] CCR*, Article 1, Sec. 1.15.

(Emphasis added; citations to record omitted.) These undisputed facts establish that BankEast, Civis' predecessor in interest, did not acquire the entire interest of TCAC at the foreclosure sale, and thus, does not qualify as "Declarant" under the Declaration of CCR. We disagree with the argument of Civis that "BankEast did not obtain Declarant's rights as a 'Mortgagee' at the foreclosure sale." The sale was held under the terms of the deeds of trust held by BankEast, in order to satisfy the debt from loans to finance the development of the property. All of the rights and interests purchased by BankEast were transferred as a result of the default and foreclosure, *at the foreclosure sale*.

The reason the drafters of the Declaration of CCR included a restriction on a mortgagee becoming a "Declarant" is fairly obvious: if a lender could become a Declarant by foreclosing on a portion of the development property and not the whole, then there could be more than one Declarant in the event of default. The rights of a Declarant to develop, govern and manage the property are rather extensive. They include, for example, the right to "unilaterally amend this Declaration for any purpose." To have more than one Declarant in such a situation would lead to chaos. Because Civis does not qualify as a Declarant under the Declaration of CCR, the trial court correctly held that it was not exempt from paying maintenance assessments on property lots it owned within the development.

## V.

In summary, although we disagree with two of the grounds relied upon by the trial court, we agree with its conclusion that Civis is not the Declarant under the Declaration of CCR because BankEast did not acquire TCAC's entire interest at the foreclosure sale.

13

## VI.

The summary judgment in favor of the HOA is affirmed. Costs on appeal are assessed to the appellant, Civis Bank. The case is remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE