IN RE ZOELLNER TRUST.
DOROTHY ANN WILLIAMS ET AL., SOLE BENEFICIARIES.
UNDER THE TRUST OF CHARLES I. ZOELLNER, DECEASED,
APPELLEES, V. NATIONAL BANK OF COMMERCE TRUST
AND SAVINGS ASSOCIATION, TRUSTEE, APPELLANT.

325 N.W.2d 138

Filed October 22, 1982. No. 44393.

Gary L. Dolan and Knudsen, Berkheimer, Beam, Richardson & Endacott, for appellant.

John F. Wright and Wright & Simmons, for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

The National Bank of Commerce Trust and Savings Association (NBC), a Lincoln, Nebraska, banking institution, had been serving as the trustee under the will of Charles I. Zoellner, deceased. Upon the

application of the beneficiaries, it was removed as such trustee by the county court of Scotts Bluff County, which in turn appointed the Scottsbluff National Bank and Trust Company as successor trustee. Upon appeal to the District Court, that action was affirmed. This appeal followed.

According to appellant's brief, on May 26, 1959, a decree of distribution was entered in the estate of Charles I. Zoellner, deceased, transferring the residue of his estate to The First Trust Company of Lincoln, Nebraska (First Trust), as trustee named in his will. NBC is the successor of First Trust. The deceased was and the principal beneficiary, Dorothy Ann Williams, is a resident of Scotts Bluff County. At the time the will was drawn, and also as of the date of the settlor's death, the Scottsbluff bank, although it had been the settlor's personal bank, was possessed of no trust powers or authority. Such powers were not obtained until 1964.

The beneficiaries of this trust are Dorothy Ann Williams, Ann O'Connor Williams, and Allan Hayes Williams, the daughter and grandchildren of the settlor. They filed their petition in 1980, alleging that NBC is located approximately 400 miles from the principal beneficiary's home in Scottsbluff; that the real estate belonging to the trust is located in Scotts Bluff County; and that the "efficient administration and the best interests of the beneficiaries require that the National Bank of Commerce be removed as the trustee . . . ."

Principally involved in this appeal is the interpretation of Neb. Rev. Stat. § 30-2816 (Reissue 1979), which provides in pertinent part as follows: "A trustee is under a continuing duty to administer the trust at a place appropriate to the purposes of the trust and to its sound, efficient management. If the principal place of administration becomes inappropriate for any reason, the court may enter any order furthering efficient administration and the interests

of beneficiaries, including . . . removal of the trustee and appointment of a trustee in another state.''

Only Dorothy Ann Williams, Allan Hayes Williams, and an officer of the Scottsbluff bank testified. NBC offered no evidence. The record discloses that the corpus of the trust includes money invested in NBC's fixed income and equity account, as well as real estate. This trust-owned real estate is one of two connected buildings which make up the Zoellner store. This building was purchased by the trustee in 1963. There is also no dispute but that the other building is owned by Dorothy Ann Williams, the sole income beneficiary of the trust; that she leases the trust-owned building from NBC, and, in turn, leases both buildings to a corporation, owned by Allan Hayes Williams, which operates the store. Mrs. Williams collects one rental check from her son, pays the insurance and taxes, keeps that portion of the rental income attributable to her own building, and remits the balance to NBC. She then receives quarterly income payments back from NBC. This arrangement is one of the reasons why she insists that it would be more convenient for her to have a trustee located in Scottsbluff.

Mrs. Williams had several complaints about the way in which NBC managed the trust. She claims to have had difficulty getting reports from NBC for tax purposes, that no one from NBC has contacted her since her husband died in 1977, and that even though she has notified NBC of a change of address, checks are sent by it to her former address, where her son now lives. She also complained that the trustee did not inspect the property, that she has difficulty reaching representatives of the trustee by phone and that they have not been nice to her, and that she has no reason to go the 400 miles to Lincoln other than once a year, whereas the Scottsbluff National Bank and Trust Company was but a half block from the store.

Allan Hayes Williams had some of the same complaints, and particularly felt that the trust officer to whom he was referred was quite rude to him. Later, after learning that this particular officer was then working but part time, he claims to have written a letter in 1977 inquiring as to who would be handling the trust. To this inquiry, he stated that he received no answer. He testified that it was necessary for his mother to manage the real property, including the obtaining of insurance. He also complained that as of October of 1980, the $45,000 invested in the fixed income and equity assets of the trustee were only returning approximately 5 percent, whereas certificates of deposit during the same period of time paid from 9 to 14 or 15 percent. The real estate was paying approximately 6 percent.

The trust officer of the Scottsbluff bank simply testified that his bank was capable of and willing to handle this particular trust, that it would inspect the property at least on an annual basis, and that it would be less costly to do this inspection than having to send someone out 400 miles to do so.

Prior to the adoption of the Nebraska Probate Code, which includes § 30-2816, a trustee could be removed for one of the following grounds: The existence of a substantial personal disability in the trustee, a failure of the trustee to perform the duties of its position, misconduct in office of the trustee, or hostile relations between the beneficiaries and the trustee of such nature as to interfere with the proper execution of the trust. *Reed v. Ringsby,* 156 Neb. 33, 54 N.W.2d 318 (1952).

However, the beneficiaries assert that under the Nebraska Probate Code a court "may enter any order furthering efficient administration in the interests of the beneficiary including the removal of the trustee." Brief for Appellees at 12. The trial court apparently agreed with this position, because its findings simply were "that in furthering the efficient

administration of the Trust . . . the National Bank of Commerce Trust and Savings Association should be removed as Trustee . . . ." We do not agree.

It is true that under the provisions of § 30-2816 the court may enter any order "furthering efficient administration" of the trust, but first it must find that the "principal place of administration [has become] inappropriate for any reason." We believe this language to be clear and unambiguous. In construing a statute we must, if possible, discover the legislative intent from the language of the act and give effect thereto. However, if the language is unambiguous, there is no necessity for construction and we have no jurisdiction to change it. *State v. Levell,* 181 Neb. 401, 149 N.W.2d 46 (1967).

In construing this section the key word is "inappropriate." Webster's Third New International Dictionary, Unabridged (1968), defines *inappropriate* as "Not appropriate : unbecoming, unsuitable," and The Oxford Dictionary, Vol. V, Part II (1901), offers the definition of "Not appropriate; unsuitable to the particular case; unfitting, improper." A place of administration which may be less efficient, less convenient, or less pleasant is not necessarily improper or unsuitable unless, in combination with other circumstances, it interferes with the proper administration of the trust. *Pavel v. Hotovy,* 131 Neb. 373, 268 N.W. 297 (1936). If the law were otherwise, it would subject a trustee to removal proceedings whenever a new trust institution was created which was more conveniently located to the residence of the beneficiaries. This was not the legislative intent.

Appeals involving the 'administration of a trust are equity matters and are reviewable in this court de novo on the record. *Scully v. Scully,* 162 Neb. 368, 76 N.W.2d 239 (1956). After conducting such a review, we do not believe that the place of administration has become "inappropriate."

The rate of return on investments had nothing to do with the location of the trustee, nor did the claimed rudeness of one of its employees. Inferentially, at least, the real property was acquired by the trust at the request of the beneficiaries, i.e., it was conveniently and strategically located with reference to the family business in which they were directly connected. The beneficiaries were using this building as if they presently owned it. Their present and future interests and their control and obligations under the leases were such as to render any additional supervision and inspection by the trustee an exercise in redundancy. The place of administration of the trust did not interfere with the proper administration of the same, and therefore was not inappropriate.

The judgment of the District Court is reversed and the cause is remanded with directions to reinstate NBC as trustee.

REVERSED AND REMANDED WITH DIRECTIONS.

CLINTON, J., participating on briefs.

WHITE, J., dissenting.

The majority holds that an indifferent trustee, who maintains limited, if any, contact with the beneficiary, is separated by hundreds of miles from the place where the trust corpus is located, and achieves an extremely modest return on trust liquid assets is not inappropriate. I do not agree. The District Court decision removing the trustee was correct and its decision should be affirmed.

BOSLAUGH and CLINTON, JJ., join in this dissent.