### John LARKIN v. CITY OF BURLINGTON

[772 A.2d 553]

No. 99-219

April 13, 2001. Plaintiff John Larkin appeals the superior court's dismissal of his suit seeking damages resulting from defendant City of Burlington's refusal to apply to his zoning permit application the terms of a consent judgment entered into by the City and a previous owner of the subject property. We affirm.

In 1985, Northshore Partnership and Northshore Development, Inc. (hereinafter "Northshore") entered into a development agreement with the City concerning property owned by Northshore. Northshore later sought the City's approval to develop a portion of the property commonly referred to as the marina site. The City denied the permit application. Northshore appealed the permit denial and brought a damages suit in the superior court,* ·which was eventually settled pursuant to a consent judgment signed by the City and Northshore on April 26, 1989. The consent judgment allowed Northshore to apply for a permit seeking no more than sixty residential units on the marina site. Under the agreement, permit approval would be "subject to all ordinances and regulations duly adopted and in effect on the date hereof." The consent judgment provided that it "shall be binding on the successors and assigns of Northshore."

In March 1990, the City granted Northshore approval to construct a 38-condominium-unit development on the marina site. Two years later, the City extended the zoning permit to allow con-

struction on the project by no later than March 1993. Northshore never built the project and never sought an extension of the permit deadline. Eventually, title to the property was transferred to the Chittenden Bank through foreclosure proceedings. Larkin entered into a purchase and sale agreement with the bank on March 14, 1997. Before he purchased the property, Larkin was given a copy of a May 1995 appraisal specifically noting that the property had no development permits or approvals, and that the status of the 1989 consent judgment was unclear. The purchase and sale agreement itself contained handwritten amendments, initialed by Larkin, indicating that the property would be conveyed "as is" under a limited warranty deed.

In June 1997, the same month he purchased the subject property from the bank, Larkin sought the benefits of the consent judgment in applying for a zoning permit to construct a sixty-unit elderly housing project on the marina site. In August 1997, following two days of public hearings, the planning commission denied the permit based on design review criteria contained in the then-current zoning laws, as opposed to those in place at the time of the 1989 consent judgment. The commission stated that the large scale and site design of the planned buildings created a 460-foot continuous vertical wall that blocked lake views from public access trails. The commission concluded that the development would need to be scaled down and sited differently to avoid creating a massive visual barrier and to better respect the area's natural areas.

In September 1997, Larkin appealed the planning commission's decision to the environmental court. Larkin also filed a suit in the superior court, seeking damages and injunctive and declaratory relief based on claims that the City's refusal to apply the consent judgment to his permit application violated a court order, violated his constitutional due process and

---

* The suit was brought before jurisdiction over zoning matters became vested in the environmental court. See 4 V.S.A. § 1001(b).

property rights, and constituted a breach of contract. The parties agreed to consolidate the two actions in the environmental court. In June 1998, the environmental court granted partial summary judgment in favor of Larkin, ruling that the consent judgment applied to his zoning permit application. The court remanded the matter to the planning commission to consider the application in light of the 1989 consent judgment, and simultaneously transferred the matter to the superior court, presumably to consider the viability of Larkin's damage claims. The City filed a notice of appeal of the environmental court's decision, but this Court dismissed it for failure to appeal from a final judgment or seek interlocutory appeal. In July 1999, the planning commission granted Larkin approval to build two eighteen-unit residential structures on the marina site. The permit was granted under terms of the consent judgment.

Meanwhile, the City moved for dismissal of the transferred superior court action, claiming that the court lacked subject matter jurisdiction to consider the matter. In November 1998, the superior court granted the City's motion, ruling that the environmental court had already granted Larkin the declaratory relief he sought, and that he was not entitled to damages stemming from the City's exercise of its governmental authority. Noting that the City of Burlington and its planning regulations had changed considerably since Northshore's permit application in the mid-1980s, the court stated that the City may not barter away its attributes of sovereignty with respect to its zoning powers. In response to Larkin's motion for reconsideration, the court concluded that Larkin's complaint should be dismissed not only for the reasons stated in its earlier order, but also because the environmental court had exclusive subject matter jurisdiction over claims stemming from actions taken by city officials concerning zoning mat-

ters. On appeal, Larkin contends that the superior court erred in dismissing his complaint for lack of subject matter jurisdiction, arguing that his claim for damages was outside the environmental court's narrowly defined statutory authority, and that the superior court retained jurisdiction over its own consent judgment. For the most part, Larkin does not brief the initial (and alternative) basis for the superior court's judgment — that the City was not bound by a consent judgment requiring it to abdicate its zoning authority.

We need not address which court had subject matter jurisdiction over Larkin's damage claims because, regardless of which one did, we agree with the superior court that those claims should be dismissed. Before addressing the substantive issues, we make the following preliminary points. First, the environmental court's decision regarding the applicability of the consent judgment was not a final judgment because the matter was remanded to the planning commission and transferred to the superior court. See *Huddleston v. Univ. of Vermont*, 168 Vt. 249, 251, 719 A.2d 415, 417 (1998) (court's order is not final unless it resolves controversy between parties); *In re Cliffside Leasing Co.*, 167 Vt. 569, 570, 701 A.2d 325, 325 (1997) (mem.) (environmental court's decision remanding matter to zoning board was interlocutory ruling). Second, the City had no obligation to file a cross-appeal because it was content with the superior court's final order. See *Huddleston*, 168 Vt. at 255, 719 A.2d at 419 (appellee seeking to challenge aspects of trial court decision must file timely cross-appeal unless party was content with final order); *Valley Realty & Development, Inc. v. Town of Hartford*, 165 Vt. 463, 465 n.2, 685 A.2d 292, 294 n.2 (1996) (cross-appeal is unnecessary where appellee is content with final order but raises alternative grounds to support it); *Coll v. Johnson*, 161 Vt. 163, 167, 636 A.2d 336, 339 (1993)

(same). Third, we will not reverse the trial court's underlying decision if the record before us reveals any legal grounds that would justify the result. *In re Handy*, 171 Vt. 336, 343, 764 A.2d 1226, 1234 (2000); see *Levinsky v. Diamond*, 151 Vt. 178, 185, 559 A.2d 1073, 1079 (1989) ("function of this Court is to affirm the action of the trial court on any basis available and appropriate under our law"); see also *Richards v. Union High Sch. Dist. No. 32*, 137 Vt. 132, 134, 400 A.2d 987, 989 (1979) ("Error will not result in reversal if the record before us discloses any legal ground which would justify the result, even though the ground may not have been raised below and may not be briefed."); *Braune v. Town of Rochester*, 126 Vt. 527, 533, 237 A.2d 117, 121 (1967) ("Our rule is that we will affirm a ruling of a trial court upon any legal ground shown by the record, even though the ground may not have been raised below, and may not be briefed.").

As noted, the principal basis for the superior court's dismissal of Larkin's claims was that the City cannot contract away its zoning authority. It is well settled that a municipality cannot contractually deprive itself of its legislative or governmental powers. 10 E. McQuillin, The Law of Municipal Corporations § 29.07, at 277 (3d ed. 1999); see *Vermont Dep't of Pub. Serv. v. Massachusetts Mun. Wholesale Elec. Co.*, 151 Vt. 73, 81-82, 558 A.2d 215, 222 (1988) (municipality's statutory authority to exercise its police powers is in nature of public trust and thus cannot be bartered away). Accordingly, courts are likely to find "illegal contract zoning . . . where there is an express bilateral agreement that bargains away the municipality's future use of the police power." 3 A. Rathkopf & D. Rathkopf, The Law of Zoning and Planning § 29A.03[1][b], [f], at 27, 33-34 (1990) ("courts generally have held that rezoning agreements that protect land from future rezonings are void as 'illegal

contract' zoning"); see *Attman/Glazer P.B. Co. v. Mayor & Aldermen of Annapolis*, 552 A.2d 1277, 1278 (Md. 1989) (although municipality may enter into binding settlement agreement concerning certain aspects of land use, it may not contract away exercise of its zoning power).

Courts, however, have recognized the need for land-use agreements between developers and municipalities to assure stability in permitting large projects; thus, the trend has been to allow such agreements unless they constitute a usurpation of the municipality's zoning authority. See Rathkopf & Rathkopf, *supra*, § 29A.03[1][a], [c], at 22-23, 30. In fact, several states have codified the process for entering into development agreements. *Id.* § 29A.03[1][g][i], at 34-35. While these statutes generally authorize local governments to assure developers that zoning regulations in effect at the time of an agreement will remain in effect until the project is completed, they also require provisions in the agreements that pertain to the duration of the agreement and the conditions upon which the agreement may be terminated. *Id.* at 35 n.50. Even so, "[t]he extent to which a local government may validly restrict or limit its future use of the police power under statutorily authorized development agreements is an issue that has not as yet been clearly resolved by state courts." *Id.* § 29A.03[1][g][ii], at 38.

In this case, Larkin argued that the City had to consider his 1997 permit application under the 1989 consent judgment between the City and Northshore, even though the application was filed by a different developer and was for an entirely different project than the one submitted by Northshore nearly a decade earlier. Larkin's construction of the agreement would require the City to apply it to any permit application concerning the subject property by any subsequent owner at any future time, at

least until the property was developed. This would, in effect, freeze the zoning of the property until that time. In taking this position, Larkin relied on the absence of a termination provision or any other provision in the development agreement between the City and Northshore limiting the duration of the City's commitment to allow development of the subject property under its zoning laws in effect at the time of the judgment. He also necessarily relied on the provision stating that the agreement "shall be binding on the successors and assigns of Northshore."

Because we conclude that the latter provision does not apply to Larkin, we need not consider whether the development agreement unlawfully limited the City's zoning authority or further whether principles of res judicata applied to the consent judgment notwithstanding the unlawfulness of the agreement. The boilerplate language "successors and assigns," when referring to corporations, ordinarily applies only when another corporation, through legal succession, assumes the rights and obligations of the first corporation. *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1458-59 (D. Kan. 1995). Here, following foreclosure, Larkin purchased from a bank a portion of the property formerly owned by Northshore and subject to a development agreement between the City and Northshore. The agreement, which was incorporated into the 1989 consent judgment, concerned the personal rights of the developer with respect to the property. No provision of the agreement indicated that it ran with the land. Nor was Larkin a successor to Northshore as a continuation of Northshore's corporate entity. See *Farm & Home Sav. Ass'n v. Strauss*, 671 S.W.2d 682, 684-85 (Tex. Ct. App. 1984) (when used in contractual provision, "successors" is term of art that does not encompass third-party purchasers of land from corporation). Nor did North-shore assign Larkin, either orally or in writing, its interests under the consent judgment. See *Oquirrh Assocs. v. First Nat'l Leasing Co.*, 888 P.2d 659, 663 (Utah Ct. App. 1994) ("successors and assigns" language can only refer to those who succeed to party's interest *"in the contract* through inheritance, assignment, or the like," rather than to party's interest or claim *"in the premises"*); cf. *Lamb v. Geovjian*, 165 Vt. 375, 380, 683 A.2d 731, 735 (1996) (identity of parties for res judicata purposes is present when one party is so identified in interest with other party that they represent one single legal right); *Davis v. Saab Scania of America, Inc.*, 133 Vt. 317, 320, 339 A.2d 456, 458 (1975) (res judicata barred suit against successor corporation). Under these circumstances, neither the agreement nor the consent judgment extended to Larkin.

Finally, we conclude, as a matter of law, that Larkin cannot prevail on his estoppel claim, which was not addressed either by the environmental court or the superior court. Estoppel against the government is applied only in rare instances in which the elements of estoppel are met and " 'the injustice that would result from a failure to uphold an estoppel is of sufficient magnitude to justify any effect upon public interest or policy that would result from raising estoppel.' " *Workers' Comp. Div. v. Hodgdon*, 171 Vt. 526, 527, 759 A.2d 73, 75 (2000) (quoting *Stevens v. Dep't of Soc. Welfare*, 159 Vt. 408, 419, 620 A.2d 737, 743 (1992)); see *Wesco, Inc. v. City of Montpelier*, 169 Vt. 520, 523-24, 739 A.2d 1241, 1244 (1999) (equitable estoppel is based on grounds of fair dealing and justice, and may be invoked against government only in extraordinary circumstances); *In re Letourneau*, 168 Vt. 539, 547-48, 726 A.2d 31, 37-38 (1998) (same); see also *Tour Costa Rica v. Country Walkers, Inc.*, 171 Vt. 116, 120, 123, 758 A.2d 795, 799, 801 (2000) (under doctrine of promissory estoppel, promise

is binding if injustice can be avoided only by enforcing promise; whether justice requires enforcement of promise is question of law). Here, even assuming Larkin could meet the four elements of equitable estoppel, which does not appear to be the case, there is no injustice in declining to award him damages for expenses resulting from him going to court to obtain a remedy to which he was not entitled. Cf. *Chioffi v. City of Winooski*, 165 Vt. 37, 39-41, 676 A.2d 786, 788-89 (1996) (damages are normally not available for regulatory delay resulting from appeal process). This is not a situation in which Larkin conferred benefits upon the City without receiving benefits in return; indeed, in the end, his application was permitted under the 1989 consent judgment. Cf. *Marrone v. Town of Hampton*, 466 A.2d 907, 910-11 (N.H. 1983) (concluding that because town did not have legal authority to permit landscaping restricting access to public beach, plaintiffs were not entitled to damages for their reliance on town's representations inducing them to make improvements, but allowing plaintiffs to maintain quantum meruit action seeking reimbursement for improvements).

*Affirmed.*