Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/02/2022 09:06 AM CST

- 381 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

In re Margaret L. Matthews Revocable Trust.
Wells Fargo Bank, N.A., as Trustee of the Margaret L.
Matthews Revocable Trust, appellee, v. Salvation
Army and Visiting Nurse Association of the
Midlands, doing business as Visiting Nurse
Association, appellees, and Nebraska Synod
of the Evangelical Lutheran Church in
America, substituted for Pella Evangelical
Lutheran Church, appellant.

___ N.W.2d ___

Filed September 9, 2022.    No. S-21-507.

1. **Trusts: Equity: Appeal and Error.** Absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record.

2. **Declaratory Judgments.** Whether an action for declaratory judgment is to be treated as one at law or one in equity is to be determined by the nature of the dispute. The test is whether, in the absence of the prayer for declaratory judgment, the issues presented should properly be disposed of in an equitable action, as opposed to a legal action.

3. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue. However, the court may give weight to the fact that the trial court heard and observed the witnesses and their manner of testifying, and accepted one version of the facts rather than the other.

4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is an appellate court's duty to determine whether it has jurisdiction to decide the issues presented.

5. ____: ____. Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court

- 382 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

6. **Trusts: Declaratory Judgments.** Nebraska's declaratory judgment statutes allow trustees and persons interested in the administration of a trust to seek a declaration regarding any question arising in the administration of a trust.

7. **Trusts.** A trustee or beneficiary may apply to an appropriate court for instructions regarding the administration or distribution of the trust if there is reasonable doubt about the powers or duties of the trusteeship or about the proper interpretation of the trust provisions.

8. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken.

9. **Final Orders: Words and Phrases.** To be final, an order must dispose of the whole merits of the case. When no further action of the court is required to dispose of a pending cause, the order is final.

10. **Declaratory Judgments: Parties.** When declaratory relief is sought, it is a statutory requirement that all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

11. **Trusts: Courts: Jurisdiction.** The act of registering a trust gives the county court jurisdiction over the interests of all notified beneficiaries to decide issues related to any matter involving the trust's administration, including a request for instructions or an action to declare rights.

12. **Trusts: Words and Phrases.** The term "beneficiary" includes persons with a present or future beneficial interest in a trust, vested or contingent.

13. **Trusts: Intent.** The primary rule of construction for trusts is that a court must, if possible, ascertain the intention of the testator or creator.

14. **Corporations: Charities.** A gift, donation, or bequest by name, without further restriction or limitation as to use, to a corporation organized and conducted solely for charitable purposes, will be deemed to have been made for the objects and purposes for which the corporation was organized, and not to the corporation itself.

15. **Charities: Intent.** The charitable intent of the donor is ascertained by reference to the charitable purposes of the donee.

Appeal from the County Court for Douglas County: DEREK R. VAUGHN, Judge. Affirmed.

William J. Lindsay, Jr., and Zachary W. Lutz-Priefert, of Gross & Welch, P.C., L.L.O., for appellant.

Krista M. Eckhoff, Jesse D. Sitz, and Brian Barmettler, of Baird Holm, L.L.P., for the Salvation Army and the Visiting Nurse Association of the Midlands.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ., and Stecker, D.J.

Heavican, C.J.

The late Margaret L. Matthews established and amended a revocable trust prior to her death wherein she made three bequests: one each to the Salvation Army and the Visiting Nurse Association of the Midlands, doing business as Visiting Nurse Association (VNA), appellees, and one to Pella Evangelical Lutheran Church (Pella). As amended, each bequest encompassed the named beneficiary, as well as its charitable successors and assigns. Prior to Matthews' death, Pella had ceased to exist. Wells Fargo Bank, N.A. (Wells Fargo), as trustee of the trust, filed a petition for declaratory judgment concerning Pella's existence. The Nebraska Synod (Synod) of the Evangelical Lutheran Church in America (ELCA), appellant, a conglomerate of churches to which Pella belonged prior to cessation, was allowed to intervene and asserted that it was entitled to Pella's share of the trust property.

After trial, the Douglas County Court determined that the Synod was not Pella's charitable successor and assign, and it ordered that Pella's share be distributed pro rata to the Salvation Army and the VNA, the remaining named beneficiaries, pursuant to the terms of the trust. The county court accordingly denied the Synod's complaint in intervention. We affirm.

## I. FACTUAL BACKGROUND

In 2006, Matthews established a revocable trust. Pursuant to the trust, and upon her death, property was to be distributed to a number of charitable organizations. Wells Fargo was selected to serve as trustee.

The provisions located within article VIII of the trust provided for the following distribution of trust property: "(a)

- 384 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

One-half (1/2) to the SALVATION ARMY, WESTERN DIVISION, Omaha, Nebraska; (b) One-sixth (1/6) to the BETHESDA LUTHERAN HOME FOUNDATION, INC., Watertown, Wisconsin; (c) One-sixth (1/6) to the VISITING NURSE ASSOCIATION, Omaha, Nebraska; and (d) One-sixth (1/6) to the PELLA LUTHERAN CHURCH, Omaha, Nebraska." (Emphasis omitted.) The trust also provided that in the event any of the beneficiaries did not exist at the time of Matthews' death or was no longer a charity, the bequest would instead be allocated to the remaining existing and qualified charities, pro rata.

In 2010, Matthews amended her trust, modifying only article VIII. Through this amendment, Matthews removed Bethesda Lutheran Home Foundation, Inc., as a beneficiary, reallocated shares of trust property, and added the language "its charitable successors and assigns" to each charitable beneficiary as follows: "(a) One-half (1/2) to the SALVATION ARMY, WESTERN DIVISION, Omaha, Nebraska, its charitable successors and assigns; (b) One-fourth (1/4) to the VISITING NURSE ASSOCIATION, Omaha, Nebraska, its charitable successors and assigns; and (c) One-fourth (1/4) to the PELLA LUTHERAN CHURCH, Omaha, Nebraska, its charitable successors and assigns." (Emphasis omitted.)

After Matthews' death in January 2018, Wells Fargo, serving as trustee, registered the trust with the court and filed a petition for declaratory judgment. Wells Fargo sought a declaration concerning distribution of trust property pursuant to the terms of the trust as it pertained to Pella. After receiving notice of the declaratory judgment action, the Synod filed a motion to intervene, asserting that it was the proper and lawful successor of Pella and that, as such, it was entitled to Pella's share of trust property. The Salvation Army and the VNA resisted this claim, arguing that Pella had no charitable successors or assigns and, as a result, that Pella's share should be distributed between the two pro rata, pursuant to the terms of the trust.

- 385 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

On December 28, 2018, the county court authorized intervention and permitted the Synod to align as a defendant. A trial was held on the matter in April 2021 to determine whether the Synod was Pella's charitable successor and assign. The following evidence was introduced at trial.

Pella was a local Lutheran congregation in Omaha, Nebraska, whose activities were overseen by the Synod, a regional governing body within the ELCA. The Synod oversees 200-plus Lutheran congregations in Nebraska that together with the other regional synods across the nation, make up the national ELCA.

Although incorporating under state law was not a requirement of the ELCA, Pella was organized as a corporation under Nebraska law and was governed in part by its articles of incorporation. As a member of the Synod and the ELCA, Pella was also subject to, and governed by, the ELCA's model constitution in addition to its own local constitution. Whenever required provisions are updated or added to the model constitution by the ELCA, those provisions are automatically deemed to be implemented as part of all local constitutions in effect, even where local constitutions do not make any changes. The model constitution in effect at the time Pella dissolved indicated that Pella's affiliation with the ELCA could be terminated if the congregation took action to dissolve, ceased to exist, was removed from membership in the ELCA according to internal discipline procedures, or followed internal procedures otherwise set forth in the model constitution. If the congregation ceased to exist, title to any undisposed property would pass to the Synod.

In 2012, the Synod assigned the Reverend Juliet Focken to assist Pella in its search for a part-time minister after it had become clear that Pella could not support a full-time minister. In 2013 and 2014, Focken held numerous meetings with Pella's council members to suggest and work through their options moving forward. Some of these options included the continued use of a part-time minister, the merger with another

- 386 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

congregation of the Synod, or dissolution. As a result of waning membership and other financial and pastoral concerns, Pella ultimately made the decision to dissolve and cease worship services. The Synod again assigned Focken to oversee and assist Pella in this process, and it provided guidance to Pella regarding specific steps for dissolution.

Members of Pella were provided notice of a dissolution meeting; however, the notice did not feature a dissolution plan and did not indicate who received copies of this notice. At the meeting, no record was made to show that the requisite number of voting members were in attendance, nor that the requisite number of members voted in favor of dissolution. Matthews herself did not receive such notice, but Pella's then-pastor testified that Matthews did not receive a letter because of her mental state and that Matthews would not have understood its contents even if she had received a copy.

As part of the dissolution process, Pella evaluated its real and personal property and Focken compiled a list of Pella's assets, which were transferred to fellow congregations or given away to church members. In March 2014, nearly 4 years prior to Matthews' death, Pella held its last worship service. Any property or assets that remained at that time were transferred to the Synod through warranty deeds, including Pella's building. Focken then transferred Pella's members to other congregations; some members voluntarily transferred, and others, such as Matthews, were administratively transferred to a receiving congregation at Augustana Lutheran Church (Augustana) in Omaha. The remaining assets that had been transferred to the Synod were sold or disposed of shortly thereafter, including transfers of property to other congregations across Nebraska. Pella's building was sold that same month.

Brian Maas, the bishop and administrative leader of the Synod, testified to the hallmarks that indicate the existence of a congregation: It gathers regularly for worship, is served by a ministry leader, has an active identification number within the ELCA, and is recognized by the Synod and internally as

- 387 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

a congregation. According to Maas, even if there was never a formal vote to dissolve Pella, the fact that Pella lacked all of the hallmarks of a congregation meant that "within the eyes" of the Synod Pella had "ceased to exist." Maas also testified that after Pella closed, all of the usual hallmarks of a closure had occurred. The Synod had given notification to its council; distributed assets (including the church building, the parsonage, and some financial accounts); and archived all the records it had for Pella.

Maas discussed the nature of individual churches which were also corporate entities. Maas stated that a congregation's existence as a church was not contingent or dependent upon the entity's corporate structure and that there are congregations within the Synod which are not formally incorporated. The Synod does not formally require congregations to dissolve with the Secretary of State's office. A congregation which lacked the requisite hallmarks would be deemed to no longer exist regardless of whether it was still incorporated under the laws of its home state, and, alternatively, congregations which had all the hallmarks of existence would be deemed to exist even if that congregation was not incorporated under the laws of its home state.

The VNA vice president of development and communications, along with a Salvation Army major, who was also a minister and divisional secretary of business for the Salvation Army's division located in Iowa, Nebraska, and South Dakota, both testified for appellees. The VNA vice president detailed the long-term relationship between the VNA and Matthews, including that the VNA had cared for Matthews' husband in its hospice services and that a number of its hospice nurses had established close personal relationships with Matthews that lasted long after care for her husband had ceased. The Salvation Army major detailed a similar relationship between Matthews and the Salvation Army. According to the major, Matthews provided the Salvation Army with over 70 gifts during her lifetime, amounting to over $125,000 in support

- 388 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

for its charitable mission. Matthews was often in attendance at special events hosted by the Salvation Army, and some of its employees developed close personal relationships with Matthews that included visits to Matthews' home on a regular basis to watch movies and spend time with Matthews.

After considering the evidence, the county court concluded that the Synod failed to prove that it was Pella's charitable successor and assign, as such terms were used in the trust. The county court found that (1) Pella had failed to properly dissolve according to the Nebraska Nonprofit Corporation Act (NNCA) and its own internal governance documents, (2) Pella did not establish any separate foundation or charitable entity to remain associated with the ELCA following dissolution, (3) the Synod did not support the charitable functions of Pella in the same manner as Pella had prior to its dissolution, and (4) Matthews had not intended to make a distribution to the Synod. Accordingly, the county court denied the Synod's complaint in intervention and ordered that Pella's share of the trust be distributed to appellees pro rata pursuant to the alternative distribution provisions of the trust. The Synod appealed.

## II. ASSIGNMENTS OF ERROR

The Synod assigns that the county court erred in (1) concluding that the Synod was not an appropriate successor to Pella, (2) concluding that the Synod was not entitled to receipt of Pella's share of Matthews' assets and that such assets should not have been distributed to the Synod, (3) finding that Pella failed to follow its own requirements for dissolution, (4) making a resolution of a doctrinal dispute, and (5) failing to properly follow the religious associations statutes.

## III. STANDARD OF REVIEW

We begin by clarifying our standard of review. Beginning in 1982 with *In re Zoellner Trust*,[1] this court stated that all

---

[1] *In re Zoellner Trust*, 212 Neb. 674, 678, 325 N.W.2d 138, 141 (1982).

- 389 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

"[a]ppeals involving the administration of a trust are equity matters and are reviewable in this court de novo on the record." A de novo on the record standard was thereafter applied to most appeals involving trust administration issues. However, an error on the record standard has also been utilized in a smaller number of appeals regarding trust administration issues. We recognized both standards of review in *In re R.B. Plummer Memorial Loan Fund Trust*[2] and focused on the specific issues presented to determine whether de novo review applied.

[1] In *In re Margaret Mastny Revocable Trust*,[3] we concluded that this issue-specific approach was preferable and more consistent with our standard for appellate review under the Nebraska Probate Code. Accordingly, we held that "absent an equity question, an appellate court reviews trust administration matters for error appearing on the record; but where an equity question is presented, appellate review of that issue is de novo on the record."[4]

[2] Pursuant to these holdings, whether this court reviews the issues de novo on the record or for error on the record requires examination of the issue underlying the claim. While this case began as a declaratory judgment action, similar to a trust administration issue, we have held that whether an action for declaratory judgment is to be treated as one at law or one in equity is to be determined by the nature of the dispute.[5] The test is whether, in the absence of the prayer for declaratory judgment, the issues presented should properly be disposed of in an equitable action, as opposed to a legal action.[6]

---

[2] *In re R.B. Plummer Memorial Loan Fund Trust*, 266 Neb. 1, 661 N.W.2d 307 (2003).

[3] *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011).

[4] *Id.* at 198, 794 N.W.2d at 710.

[5] See *Homestead Estates Homeowners Assn. v. Jones*, 278 Neb. 149, 768 N.W.2d 436 (2009).

[6] *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994).

- 390 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

Utilizing that test in the present case, the issues resemble injunctive relief, an equitable remedy. The purpose of an injunction is to restrain actions that have not yet been taken.[7] Similarly, the Synod has requested, through its complaint in intervention and answer to Wells Fargo's petition, that the court find the Synod to be Pella's charitable successor and assign, and the Synod asks the court to order Wells Fargo to either do or refrain from doing a specified act, i.e., to distribute Pella's share to the Synod rather than to the other named beneficiaries.

[3] Accordingly, we review this case de novo on the record.[8] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue.[9] However, the court may give weight to the fact that the trial court heard and observed the witnesses and their manner of testifying, and accepted one version of the facts rather than the other.[10]

## IV. ANALYSIS

### 1. Jurisdiction

[4] Before reaching the legal issues presented for review, it is our duty to determine whether we have jurisdiction to decide them.[11] This case presents multiple jurisdictional questions, so we find it necessary to exercise that duty here.

### (a) Subject Matter Jurisdiction of County Court

[5] Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an

---

[7] *Stewart v. Heineman*, 296 Neb. 262, 892 N.W.2d 542 (2017).

[8] See *In re Margaret Mastny Revocable Trust, supra* note 3.

[9] *Id.*

[10] *Siedlik v. Nissen*, 303 Neb. 784, 931 N.W.2d 439 (2019).

[11] *Green v. Seiffert*, 304 Neb. 212, 933 N.W.2d 590 (2019).

- 391 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court. [12] Thus, we begin with a review of the county court's jurisdiction in this matter.

According to Neb. Rev. Stat. § 30-3814(a) (Reissue 2016), to the full extent permitted by the Nebraska Constitution, the county court has jurisdiction over all subject matter relating to trusts. Neb. Rev. Stat. § 30-3819 (Reissue 2016) states that by registering a trust or accepting the trusteeship of a trust, the trustee submits to the jurisdiction of the court of registration in any proceeding under Neb. Rev. Stat. § 30-3812 (Reissue 2016). Section 30-3812(c) specifically states that a judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and an action to declare rights.

[6,7] We have said that Nebraska's declaratory judgment statutes allow trustees and persons interested in the administration of a trust to seek a declaration regarding any question arising in the administration of a trust. [13] A trustee or beneficiary may apply to an appropriate court for instructions regarding the administration or distribution of the trust if there is reasonable doubt about the powers or duties of the trusteeship or about the proper interpretation of the trust provisions. [14]

Wells Fargo requested that the county court declare that Pella did not exist, declare that Pella was not a beneficiary, and order Wells Fargo to distribute the trust's assets to the Salvation Army and to the VNA. Wells Fargo also requested that the county court find that such actions would not violate Wells Fargo's duties as trustee and to find that the trust shall terminate upon payment of expenses, taxes, and distribution of remaining trust assets. Essentially, Wells Fargo

---

[12] See *In re Estate of Evertson*, 295 Neb. 301, 889 N.W.2d 73 (2016).

[13] *In re Trust Created by Hansen*, 274 Neb. 199, 739 N.W.2d 170 (2007).

[14] *Id.*

- 392 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

requested that the county court instruct it, as trustee, on its duties and powers related to payment of charitable bequests within Matthews' trust. This action is thus authorized pursuant to §§ 30-3812(c), 30-3814(a), and 30-3819, as well as the Nebraska Uniform Declaratory Judgments Act,[15] and the county court had jurisdiction to adjudicate Wells Fargo's petition for declaratory judgment.

(b) Appellate Jurisdiction

[8,9] For an appellate court to acquire jurisdiction of an appeal, there must be a final judgment or final order entered by the tribunal from which the appeal is taken.[16] To be final, an order must dispose of the whole merits of the case. When no further action of the court is required to dispose of a pending cause, the order is final.[17]

In this case, Wells Fargo registered the Matthews trust and filed a petition with the court seeking a declaratory judgment regarding distribution of trust funds. Wells Fargo requested that the county court declare that Pella either did not exist or was not a charity at the time of Matthews' death, declare that Pella was not entitled to a share of trust assets, and order Wells Fargo to distribute the trust's assets to the Salvation Army and to the VNA.

After hearing from Wells Fargo and from the Synod, the county court entered an order denying the Synod's complaint in intervention. It held that pursuant to the terms of the trust, "Pella['s] share of the Trust shall be distributed pro rata to the Salvation Army and [the VNA]." The order also stated that any additional motions or matters pending that were not decided in accordance with the order were denied as moot. This order disposed of the whole merits of the case by granting the relief sought by Wells Fargo in its petition

---

[15] Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 2016).

[16] *In re Estate of Severson*, 310 Neb. 982, 970 N.W.2d 94 (2022).

[17] *Olsen v. Olsen*, 248 Neb. 393, 534 N.W.2d 762 (1995).

- 393 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

for declaratory judgment. Pursuant to this order, Wells Fargo would have the authority to disburse funds to the Salvation Army and to the VNA, and there were no remaining issues which would require further action by the court. Accordingly, this was a final, appealable order.

### (c) Notice to Augustana

In its petition for declaratory judgment, Wells Fargo named the three charitable beneficiaries listed in the trust—the Salvation Army, the VNA, and Pella—but did not name either the Synod or Augustana. The record indicates that the Synod and Augustana each obtained property, assets, or congregation members from Pella when it dissolved, and this raises a question of whether either entity is a necessary party to this action. While the Synod intervened in the matter, Augustana did not intervene and took no action in this case. Thus, we must consider whether Augustana's absence deprived the county court, and this court, of jurisdiction over this matter.

[10] When declaratory relief is sought, we have said that it is a statutory requirement that all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.[18] However, the declaratory relief sought by Wells Fargo in this case relates to its duties as trustee, and thus, in addition to our rules regarding declaratory judgments, it also implicates the Nebraska Uniform Trust Code.

By registering a trust, the trustee submits personally to the jurisdiction of the court of registration in any proceeding under § 30-3812 relating to the trust while the trust remains registered, and to the extent of their interests in the trust, all beneficiaries of a trust properly registered in this state are subject to the jurisdiction of the court of registration for the purposes of proceedings under § 30-3812, provided notice is

---

[18] *SID No. 2 of Knox Cty. v. Fischer*, 308 Neb. 791, 957 N.W.2d 154 (2021).

- 394 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

given pursuant to Neb. Rev. Stat. § 30-2220 (Reissue 2016).[19] Section 30-2220(a)(2) states that notice by publication can be accomplished by publishing at least once a week for three consecutive weeks a copy thereof in a legal newspaper having general circulation in the county where the hearing is to be held, the last publication of which is to be at least 3 days before the time set for the hearing.

After Matthews' death in January 2018, Wells Fargo registered Matthews' trust with the Douglas County Court on July 16. In September, Wells Fargo filed a petition for declaratory judgment regarding the distribution of a trust under the Nebraska Uniform Trust Code and the Nebraska Uniform Declaratory Judgments Act.[20] The county court set a hearing date for November 5. A notice of the hearing was forwarded by the court registrar to The Daily Record, a legal newspaper, with instructions for publication of the notice as required by statute.[21]

Wells Fargo thereafter filed an affidavit of mailing in accordance with statute,[22] affirming to the court that notice of the proceeding was first published in Douglas County, Nebraska, and that on September 20, 2018, Wells Fargo sent copies of the notice of hearing and petition for declaratory judgment by certified mail to 26 parties. Of the 26 notices mailed, 12 were directed to the registered agent and former directors of Pella, 2 were directed to the Salvation Army's registered agent and legal department, 1 was directed to the Nebraska Attorney General, and 11 were directed to the registered agent and directors of Augustana. As a result of this notice, the Synod sought, and was allowed, to intervene in the action and align as a defendant. A copy of the Synod's complaint in

---

[19] See § 30-3819(a) and (b).

[20] See §§ 30-3812(c), 30-3814(a), 30-3819, and 25-21,149 et seq.

[21] § 30-2220(a)(2).

[22] § 30-2220(c) ("[p]roof of the giving of notice shall be made on or before the hearing and filed in the proceeding").

- 395 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

intervention was mailed to all interested parties, including at least 11 directors of Augustana. Hence, we find that Augustana was properly notified of these proceedings.

[11,12] We have said that "[t]he act of registering a trust gives the county court jurisdiction over the interests of *all notified beneficiaries* to decide issues related to any matter involving the trust's administration, including a request for instructions or an action to declare rights."[23] The term "beneficiary" includes persons with a present or future beneficial interest in a trust, vested or contingent.[24] We have also held that Nebraska's declaratory judgment statutes allow trustees and persons interested in the administration of a trust to seek a declaration regarding any question arising in the administration of a trust, including a request for the court to instruct the trustee of its duties and powers.[25]

In this action, the county court had jurisdiction to make a declaration of rights of the beneficiaries of the trust and to accordingly instruct Wells Fargo as to the distribution of trust property. Because Augustana was properly notified of the trust proceedings, Augustana's absence did not deprive the county court of jurisdiction and the county court's judgment in the matter is binding on Augustana to the extent of its interests in the trust. Consequently, this court has jurisdiction over this claim. We turn now to the merits of the Synod's claim.

## 2. Doctrinal Issues

The Synod assigns that the county court erred in making a resolution of a doctrinal dispute, an issue which underlies each of the Synod's arguments. The Synod argues that the determination of whether Pella had ceased to exist is a doctrinal matter, which can only be made by the Synod, and that such

---

[23] *In re Trust Created by Hansen, supra* note 13, 274 Neb. at 206-07, 739 N.W.2d at 177 (emphasis supplied).

[24] *In re Trust Created by Hansen, supra* note 13.

[25] *Id.*

- 396 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

determination cannot be adjudicated by the court using neutral principles of law.

The Synod misunderstands this court's use of neutral principles of law to adjudicate disputes involving religious entities. We have applied the NNCA[26] to assess church closings and property transfers to affiliate churches and have applied a neutral principles of law approach to adjudicate disputes where religious organizations disagree with one another as to the state of the law or resolution of their dispute.

For example, in *Glad Tidings v. Nebraska Dist. Council*,[27] this court applied the NNCA to adjudicate an intrachurch dispute regarding property held by each entity. In *Glad Tidings*, a local church wanted to dissolve and a larger affiliate church ordered that certain property belonging to the local church must be transferred to the larger affiliate. The local church sought a declaration that the board of directors had exceeded its authority in transferring such property to the larger affiliate. We applied the NNCA and the Model Business Corporation Act to define the term "transaction" as it related to the dispute and concluded that no transaction had occurred between the local and larger church entities. We did not overstep the authority of each church entity to decide its own outcomes in regard to doctrinal matters, but instead looked to the rules governing corporations to resolve a nondoctrinal question between the entities concerning the property dispute.

And in *Aldrich v. Nelson*,[28] this court found that the district court had jurisdiction to adjudicate the dispute, even where the issue presented was an internal church dissolution dispute between a local Lutheran church and the larger

---

[26] See Neb. Rev. Stat. §§ 21-1901 to 21-19,177 (Reissue 2012 & Cum. Supp. 2020).

[27] *Glad Tidings v. Nebraska Dist. Council*, 273 Neb. 960, 734 N.W.2d 731 (2007).

[28] *Aldrich v. Nelson*, 290 Neb. 167, 859 N.W.2d 537 (2015).

- 397 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

affiliated synod. We stated the court was allowed to apply neu-
tral principles, defined as "'secular legal rules whose applica-
tion to religious parties or disputes [do] not entail theological
or religious evaluations,'" in order to determine the outcome
of the issue from a secular, not religious, perspective.[29] Here,
the same is true: The county court was not tasked with deter-
mining the doctrinal question of whether Pella existed with
such hallmarks that it qualified as a congregation within the
ELCA and was subject to the control of the Synod. Instead,
the county court was tasked with analyzing whether Pella's
methods of dissolution had an impact on whether the Synod
was Pella's charitable successor and assign and thus entitled to
Pella's portion of trust property.

The Synod agrees that Pella did not exist at the time of
Matthews' death. The parties disagree as to whether Pella had
a charitable successor and assign for purposes of the trust. In
order to interpret the meaning of the phrase "charitable suc-
cessors and assigns," the county court looked to the NNCA to
assess whether Pella, as a nonprofit corporation incorporated
in the State of Nebraska, had dissolved in a manner consistent
with State law such that the specific charitable activities of
Pella would be supported by the Synod moving forward, mak-
ing the Synod a charitable successor and assign of Pella. The
county court did not make a resolution of a doctrinal dispute
in determining the issues of this case. This assignment of error
is without merit.

### 3. Religious Associations Statutes

After arguing that this issue is a doctrinal matter, the Synod
next argues that the county court erred in analyzing the issues
under the NNCA, asserting that such statutes do not control
the issue of Pella's existence. The Synod argues that the
county court should have looked to the statutes concerning

---

[29] *Id.* at 170, 859 N.W.2d at 540.

- 398 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

religious associations and the vesting of property in religious entities which have ceased to exist.[30]

Contrary to the Synod's position on this matter, these statutes merely establish a method for church entities to obtain good title for real and personal property owned by a church which is abandoned or which ceased to exist.[31] These statutes might have been applicable if Pella had dissolved without first transferring its real and personal property to the Synod. But here, Pella ensured that the Synod was able to obtain good title and executed warranty deeds for its property to the Synod. The religious association statutes do not resolve the issue of whether the Synod was a charitable successor and assign of Pella such that it is entitled to Pella's share of the trust. This assignment of error is without merit.

### 4. PELLA'S DISSOLUTION

Next, the Synod argues that the county court erred in finding that Pella failed to follow its own requirements for dissolution. Pella, as a religious nonprofit corporation incorporated under the laws of Nebraska, was subject to the NNCA. Under the NNCA, steps for corporate dissolution are set forth at § 21-19,130. The record indicates that Pella sent notice regarding a special meeting to vote on dissolution, but that no record was made as to which members received notice, which members were present at the meeting, or how many members voted. This evidence is therefore insufficient to prove that Pella complied with the two-thirds or majority vote provisions required by the NNCA for dissolution.

The evidence is also insufficient to prove that Pella complied with its own internal requirements for dissolution. According to the ELCA's model constitution, a congregation's affiliation with the ELCA can be terminated if the congregation takes action to dissolve, ceases to exist, is removed from

---

[30] See Neb. Rev. Stat. §§ 21-2801 to 21-2803 (Reissue 2012).

[31] See § 21-2801(3).

- 399 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

membership, or follows the procedures laid out at "*C6.05." for termination, which include a resolution indicating intent to terminate, 30 days' notice of the meeting to the bishop of the Synod, and a special meeting and two-thirds vote of voting members present, among other provisions. These provisions within the model constitution are required provisions and were binding on Pella even in the absence of a change to Pella's local constitution. But again, the record does not contain evidence that Pella gave the required notice, that the notice was received by the correct parties, or how many members attended the special meeting or voted in favor of dissolution. Testimony from both Maas and Focken also showed that Pella's council and leadership members had received a copy of the ELCA's suggested steps for dissolution, but that Pella did not follow them.

In dissolving its congregation, Pella did not follow the steps for dissolution set forth in the NNCA or the steps set forth in Pella's own constitution and bylaws, nor did Pella follow the ELCA's suggested steps for dissolution. Pella thus failed to follow its own requirements for dissolution, and this assignment of error is without merit.

## 5. Successors and Assigns

Finally, the Synod assigns that the county court erred in concluding that the Synod was not "an appropriate successor" to Pella and that as such, the Synod was not entitled to Pella's share of the Trust.

### (a) Natural Versus Charitable Successors

The Synod argues, in part, that the Synod was Pella's natural successor or appropriate successor and asserts that any property held by Pella should thus become the property of the Synod. The trust stated that the bequest was for Pella, if in existence as a charity, or to Pella's "charitable successors and assigns." Use of the term "natural" in this context is inappropriate and does not resolve the issues raised by either party; hence, we limit

- 400 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

our analysis here to whether the Synod is a charitable successor and assign of Pella.

(b) Plain Meaning of Successors and Assigns

The term "successor" is defined as (1) "[s]omeone who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor"; or (2) a "corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation."[32] The term "assignee" is defined as "[s]omeone to whom property rights or powers are transferred by another."[33] However, "[u]se of the term is so widespread that it is difficult to ascribe positive meaning to it with any specificity."[34] Here, both parties have focused their arguments on whether the Synod was a successor to Pella.

In concluding that the Synod was Pella's successor per these plain definitions, the Synod compares this case to *Crumbley v. Solomon*,[35] wherein a local church entity known as Franklin Tabernacle attempted to withdraw from a larger church entity, the Holiness Baptist Association, by a majority vote of its members. The opposing members of Franklin Tabernacle and trustees of the Holiness Baptist Association sued the withdrawing members to establish a right of the association to control local church property. The *Crumbley* court held that the disputed property was being held in trust by Franklin Tabernacle for the benefit of the Holiness Baptist Association. For that reason, where the deed to property held by the local church used the phrase "successors and assigns," it contemplated that the association was such a successor.

However, the *Crumbley* decision was based on application and interpretation of statutory framework that we do not share

---

[32] Black's Law Dictionary 1732 (11th ed. 2019).

[33] *Id.* at 147.

[34] *Id.*

[35] *Crumbley v. Solomon*, 243 Ga. 343, 254 S.E.2d 330 (1979).

- 401 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

with Georgia and was the result of a very different factual circumstance wherein the two church entities were in disagreement with one another as to the rightful owner of the property. In *Crumbley*, the local church had vested rights in the disputed property; here, Pella merely had a contingent interest in the trust. The rules of the local church in *Crumbley* stated that all property would be held for the larger entity, regardless of the decisions of the local church to leave the larger entity at a later time. Here, Pella's property would pass to the ELCA if the congregation was both dissolved and its property was undisposed, but Pella otherwise retained a right to deed its property to other Lutheran congregations or entities. *Crumbley* does not resolve the issues presented here.

Next, the Synod compares this case to *Larkin v. City of Burlington*.[36] In *Larkin*, the city entered into a development agreement with Northshore concerning undeveloped property. A later dispute between the parties was settled pursuant to a consent judgment which allowed Northshore to apply for a permit seeking no more than 60 residential units on the site of the property and which was binding on the successors and assigns of Northshore. After Northshore went into foreclosure, the property was sold to the plaintiff landowner, who filed for a permit to develop the land pursuant to the consent judgment. The Vermont Supreme Court concluded that "[t]he boilerplate language 'successors and assigns,' when referring to corporations, ordinarily applies only when another corporation, through legal succession, assumes the rights and obligations of the first corporation."[37] The development agreement was not binding on the plaintiff landowner because he had not assumed the rights and obligations of Northshore in developing the premises and was not a continuation of Northshore's corporate entity.

---

[36] *Larkin v. City of Burlington*, 172 Vt. 566, 772 A.2d 553 (2001).

[37] *Id.* at 569, 772 A.2d at 557.

- 402 -

Nebraska Supreme Court Advance Sheets
312 Nebraska Reports
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

While both parties have focused their arguments here on whether the Synod has proved that it assumed any rights and obligations of Pella such that *Larkin* would control the disposition of trust assets one way or another, both parties have incorrectly framed the issues presented by this case: When Matthews amended her trust, she made a bequest to Pella as a charitable organization and specifically allowed that the bequest could only be made to Pella, if it continued to exist as a charity, or to its charitable successors and assigns, if such successor organization was also a charity. The trust did not provide rights to a mere corporate successor, and the holdings in *Larkin* regarding corporate successors and assigns distracts from the real issue.

Whether the Synod was Pella's successor for purposes of corporate property ownership would answer the question of what to do with property owned by or vested in Pella. But resolution of that question does not answer what to do where a property interest has not yet vested in Pella, as is the case here.[38] In order to be entitled to Pella's share of trust property under the terms of the trust, the Synod must prove that it is a *charitable* successor or assign of Pella.

### (c) Charitable Successor

[13-15] The primary rule of construction for trusts is that a court must, if possible, ascertain the intention of the testator or creator.[39] A gift, donation, or bequest by name, without further restriction or limitation as to use, to a corporation organized and conducted solely for charitable purposes, will be deemed to have been made for the objects and purposes for which the corporation was organized, and not to the corporation

---

[38] See *In re Trust Created by Haberman*, 24 Neb. App. 359, 886 N.W.2d 829 (2016) (until testator's death, beneficiary's interest in trust property is merely contingent expectancy).

[39] *In re Wendland-Reiner Trust*, 267 Neb. 696, 677 N.W.2d 117 (2004).

- 403 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

itself.[40] The charitable intent of the donor is ascertained by reference to the charitable purposes of the donee.[41]

Membership in Pella was already waning at the time Matthews amended her trust to add the "charitable successors and assigns" language, apparently in an effort to avoid complications if Pella ceased to exist either as an entity or as a charity prior to Matthews' death. Through this amendment, Matthews established a clear intention to leave money not just to Pella, the Salvation Army, or the VNA as corporate entities, but as charities which undertook specific charitable purposes. Thus, in order to establish a right to Pella's share of trust property, the Synod must prove that it can and will carry on the charitable goals and purposes of Pella.

According to the testimony of Maas, local congregations such as Pella are gathered to form their local worshiping community. The Synod, on the other hand, is a "district-like organization" that oversees as many as 233 congregations in Nebraska. According to Maas, members and staff of the Synod work to oversee congregations, taking care of paperwork, as well as other legal and administrative matters. Unlike the local congregations, the Synod typically holds services annually, not weekly. The Synod ultimately functions differently than Pella and does not share the same specific purposes which were previously undertaken by Pella, a local congregation of which Matthews was a member. Based on our de novo on the record review, we find that the Synod has not proved it was a charitable successor and assign of Pella. The Synod's first assignment of error is without merit.

Where the Synod has not proved that it is a charitable successor and assign to Pella, it is not entitled to a share of trust

---

[40] *In re Estate of Harrington*, 151 Neb. 81, 36 N.W.2d 577 (1949). Accord *Root v. Morning View Cemetery Assn.*, 174 Neb. 438, 118 N.W.2d 633 (1962).

[41] *Dept. of Mental Health v. McMaster*, 372 S.C. 175, 642 S.E.2d 552 (2007).

- 404 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
312 NEBRASKA REPORTS
IN RE MARGARET L. MATTHEWS REVOCABLE TRUST
Cite as 312 Neb. 381

property; hence, the Synod's second assignment of error is also without merit.

## V. CONCLUSION

This court has jurisdiction to adjudicate the issues presented. Resolution of the issues does not require this court to resolve any doctrinal matters, and the county court also did not make a resolution of any doctrinal matters. The county court did not err when it analyzed the issues using the NNCA, nor when it concluded that Pella failed to follow its own procedures for dissolution.

Based upon a de novo on the record review of the issues presented, we find that the Synod did not prove it was a charitable successor of Pella. The Synod's assigned errors are without merit. Accordingly, we affirm the decision of the county court, which denied the Synod's complaint in intervention and ordered distribution of Pella's share of trust assets to the Salvation Army and the VNA, pro rata, pursuant to the terms of the trust.

AFFIRMED.

MILLER-LERMAN, J., not participating.