IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE TRUST OF HUNT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN THE MATTER OF THE TRUST CREATED BY WILLIAM J. HUNT
AND DOROTHY J. HUNT.

RANDALL S. HUNT AND MARC HOCK, APPELLEES,

V.

KAREN J. ANTHONY, APPELLANT, AND PINNACLE BANK,
SUCCESSOR TRUSTEE AND APPELLEE.

Filed May 2, 2023.   No. A-22-499.

Appeal from the County Court for Gage County: LINDA A. BAUER, Judge. Affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Joseph H. Murray, of Murray Law, P.C., L.L.O., for appellee Randall S. Hunt.

Andrew K. Carothers, of Willet & Carothers, for appellee Pinnacle Bank.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Karen J. Anthony appeals orders from the Gage County Court regarding the administration of the William J. Hunt and Dorothy J. Hunt Family Trust. Karen asserts the county court erred in denying her petition to remove Pinnacle Bank as co-trustee to the trust and approving a settlement agreement and proposed amendment to the trust dated April 15, 2016. Karen also asserts the county court erred in imposing sanctions against her and her attorney in the form of attorney fees. Upon our review, we affirm the orders of the county court.

- 1 -

BACKGROUND

William and Dorothy, husband and wife, entered into a revocable trust agreement (hereinafter Hunt Trust) as grantors and co-trustees on February 23, 2005. The terms of the trust named William and Dorothy's children William Hunt Jr., Randall S. Hunt, and Karen as beneficiaries to the trust. If either William or Dorothy died before the other, the trust provided that a successor co-trustee should be assigned. The trust named William Jr. as the successor trustee, but if he was unable or unwilling to serve, then Randall would serve and was granted the power of appointment to name a successor trustee if he was also unable or unwilling to serve. According to the terms of the trust, upon the death of both William and Dorothy, the assets of the trust were to be distributed 40 percent to both William Jr. and Randall, and 20 percent to Karen.

Prior to the creation of the Hunt Trust, Karen filed suit against her father, William, over an alleged sexual assault or series of alleged sexual assaults when she was a child. William denied the allegations but ultimately entered into a settlement agreement with Karen in which William agreed to pay her $75,000 in cash and forgive $110,000 in loans. Karen still held animosity toward her family members based upon these allegations. She confronted Dorothy about the alleged assaults many times and requested restitution for Dorothy's alleged failure to protect Karen from her father.

As relevant to this appeal, the original terms of the trust limited the authority of the surviving spouse in the event either William or Dorothy died prior to the other. Paragraph 4.1 of the trust, provides in relevant part:

Grantor, acting together during their joint lifetimes may revoke or amend this trust. After the demise of one of the Grantors, the remaining Grantor, with consent of the Co-Trustee, shall have the right at any time during the surviving Grantor's lifetime to alter, amend, or revoke this agreement, either in whole or in part, by an instrument in writing delivered to the trustee. However, the duties, power and responsibilities of the Trustee shall not be changed without the Trustee's consent.

Paragraph 6.3, provides in full:

One of the primary purposes of this trust, is to provide for additional oversight of the trust assets, in the event one of the Grantors should be deceased. It is also being created so no member of the family, may obtain assets from the surviving Grantor, without the consent of the other Co-Trustee. This will allow the surviving Grantor with the benefit of having someone else say no to such requests, in the event any such requests for funds are made.

The first amendment to the Hunt Trust was executed on April 20, 2009. This amendment acknowledged the death of William on August 12, 2008. In addition, both William Jr. and Randall chose to resign as co-trustee and Pinnacle Bank was appointed. However, due to a policy at Pinnacle Bank, the following provision was added:

2.3.1 The Successor Co-Trustees shall be Pinnacle Bank and Dorothy J. Hunt. Pinnacle Bank, as Co-Trustee, shall have the power to act individually and also the power to act jointly with Dorothy J. Hunt. Dorothy J. Hunt, as Co-Trustee, shall have no authority to

act individually, and all acts of Dorothy J. Hunt must be exercised jointly with Pinnacle Bank, the other Co-Trustee.

Ronald Sutter, the president of the trust department of Pinnacle Bank in Beatrice, explained that this was a company policy that allowed the bank to manage the assets most effectively through investments without needing authority from the co-trustee. Both Dorothy and Randall signed and approved the amendment.

The second amendment to the Hunt Trust was executed on June 14, 2011. The only change made in this amendment was to adjust the distribution of assets so that Karen, Randall, and William Jr. would receive equal shares. This change was initiated by Dorothy and Pinnacle Bank approved and signed the amendment. However, just two months later, a third amendment to the Hunt Trust was executed on August 4, 2011. This amendment returned the distribution to the original percentages of 40 percent each to Randall and William Jr. and 20 percent to Karen. Again, Dorothy initiated this change which was approved by Pinnacle Bank.

The fourth amendment to the Hunt Trust was executed on August 19, 2013. This amendment acknowledged the death of William Jr. The distributive shares were adjusted so that Randall would receive 60 percent and Karen would receive 40 percent of the assets. In addition, the amendment required Karen's share to be held in a continuing trust for Karen's benefit. In his testimony, Sutter, who managed the Hunt Trust, explained that this provision was put in place because Karen had declared bankruptcy and Dorothy wished to protect the trust assets from Karen's creditors. Both Dorothy and Pinnacle Bank approved and signed this amendment without issue.

On January 13, 2015, Dorothy's sister, Bernice Pfingsten, filed a petition for appointment of temporary and permanent guardian and conservator for Dorothy. See *In re Guardianship & Conservatorship of Hunt*, No. A-16-1044, 2017 WL 4791103 (Neb. App. Oct. 24, 2017) (selected for posting to court website). Karen objected to the petition. *Id.* The county court appointed Pfingsten and Randall as co-guardians of Dorothy and Pinnacle Bank as conservator in an order dated January 21, 2016. *Id.* In affirming the county court's order, this court noted the conflict between Karen and the other family members. *Id.* We concluded that the county court's decision to appoint Pfingsten and Randall as co-guardians was supported by the evidence and the decision to appoint Pinnacle Bank, a neutral third party, was in Dorothy's best interests. *Id.*

During the same time frame as the guardianship proceedings, Karen removed Dorothy from her residence in Beatrice and brought her to Karen's home in Lincoln. She escorted Dorothy to a different attorney than Dorothy had used previously, Donald Bowman, to discuss making another amendment to the Hunt Trust. On November 10, 2015, Dorothy signed a proposed fifth amendment to the trust drafted by Bowman that changed the distributive shares so that Randall and Karen received equal shares, eliminated the continuing trust imposed upon Karen's share, and removed the requirement that the co-trustee consent to any amendment to the trust. Pinnacle Bank, through Sutter, refused to approve and sign the proposed amendment. In response, Dorothy filed a petition in the county court to amend the trust as proposed and remove Pinnacle Bank as co-trustee. Both Pinnacle Bank and Randall filed objections to the proposed amendment and petition. At a later hearing, Sutter explained that he did not approve the proposed amendment because he was concerned that Karen had been exercising undue influence over Dorothy.

During the pendency of the litigation, Bowman met with Dorothy. Bowman testified that Dorothy wished to get the issue resolved as she was stressed and wanted Karen to stop bothering her about it. She also indicated to Bowman that she was ready to back off of some of the requests Karen was making. Following this meeting, Bowman contacted Pinnacle Bank's attorney about negotiating a settlement agreement. On April 15, 2016, Dorothy and Pinnacle Bank entered into a settlement agreement which resulted in a new proposed fifth amendment to the Hunt Trust. The agreed upon proposed fifth amendment would eliminate the provision that required Karen's share to be put into a continuing trust but make no other changes. Dorothy agreed to withdraw the proposed fifth amendment dated November 10, 2015, and dismiss her petition to remove Pinnacle Bank as co-trustee. Dorothy indicated to Bowman specifically that she found this compromise to be acceptable.

On April 21, 2016, Karen filed a petition to intervene. In an amended petition dated May 18, Karen alleged Pinnacle Bank acted against Dorothy's best interests in failing to approve the proposed fifth amendment dated November 10, 2015, and should be removed as co-trustee based on a breach of trust it owed to Dorothy. Karen also requested the court to approve the original proposed fifth amendment. Pinnacle Bank, Randall, and Dorothy filed motions to dismiss Karen's petition.

Karen filed a second petition on June 22, 2017, requesting Pinnacle Bank be removed as co-trustee. In the petition, Karen alleged Pinnacle Bank intended to "sell and liquidate some part or all of the Family Assets" without the consent of Dorothy or Dorothy's immediate family members. In their answer, Pinnacle Bank admitted to selling "an acreage with the residence situated thereon" because it was necessary to liquidate trust assets to pay for Dorothy's care. Pinnacle Bank also alleged Dorothy was incapacitated and incapable of giving consent. Further, Pinnacle Bank and Randall each filed a counterclaim requesting attorney fees pursuant to Neb. Rev. Stat. § 25-824 (Reissue 2016). On July 14, 2017, the court entered an order to show cause as to why Karen's amended petition dated May 18, 2016, should not be dismissed for failure to prosecute. On October 16, 2017, three days prior to the scheduled show cause hearing, Karen dismissed both her petition filed May 18, 2016, and her petition filed June 22, 2017. Dorothy died November 18, 2017.

On February 16, 2018, Karen filed a third petition with the court requesting Pinnacle Bank be removed as co-trustee. Karen alleged Pfingsten, Randall, Pinnacle Bank, and "one or more of the attorneys who composed amendments to the Trust" exercised undue influence over Dorothy. In addition, due to the death of Dorothy, Karen also requested that the trust property be distributed in accordance with the proposed fifth amendment dated November 10, 2015. Pinnacle Bank and Randall each filed answers denying the allegations and requesting attorney fees pursuant to § 25-824 and specifically that the attorney fees be assessed to Karen and her attorney of record, jointly and severally. The court entered an order for the parties to complete discovery by October 15. Karen then filed a motion to reopen discovery on April 7, 2019. The court overruled the motion and set trial for September 19. Karen appealed the order. We summarily dismissed the appeal on July 31, 2020. A trial on Karen's petition was held on August 21, September 28, and September 30, 2020.

At the trial on Karen's petition, all witnesses were called by Karen. Bowman testified that Karen brought Dorothy in to discuss amending the Hunt Trust in late 2014 or early 2015. Bowman

explained that Karen provided the vast majority of the information in their meetings, and in hindsight, he had "no doubt" Dorothy was being influenced by Karen into entering into the amendment. However, at the time he believed that Dorothy still wanted to go forward with the amendment. Bowman acknowledged that at times Karen's pressure reduced Dorothy to tears which prompted him to admonish Karen about her behavior. He further noted that Karen had asked him to have the proposed amendment grant her 75 percent of the trust, but he advised her that would be "classic undue influence" and declined her request. He acknowledged that he allowed Karen's manipulation of her mother to go farther than he should have.

Bowman testified that after the petition to remove Pinnacle Bank was filed, he had an opportunity to meet with Dorothy in her residence at an assisted living facility. He noted that in the prior meetings only Karen explained the reasons for the amendment, those being that Dorothy had failed to protect Karen from William as a child and had acknowledged her failure. Upon meeting with Dorothy, Bowman found that Dorothy wanted to get the case settled and for Karen to leave her alone. He then negotiated the settlement agreement with Pinnacle Bank and determined that the changes made to the proposed fifth amendment were acceptable to Dorothy.

Sutter also testified. He reported that he was the president of the trust department for Pinnacle Bank and oversaw several trusts, including the Hunt Trust. He further testified that prior to his employment with Pinnacle Bank he was a practicing attorney who did extensive work with wills and trusts. Sutter explained several reasons for refusing to approve the proposed fifth amendment dated November 10, 2015. At the core of his reasoning was his belief, based on prior contact with Karen and other factors, that Dorothy had acted based on overreaching and undue influence instigated by Karen. Sutter noted that in contacts with Dorothy's prior attorney, he had been informed that issues had arisen before wherein Karen had engaged in overreaching and exertion of influence on Dorothy. He also noted that paragraphs 4.1 and 6.3 which did not allow the survivor of the two grantors of the trust to amend it without the approval of the co-trustee alerted him to the possibility of problems in the family.

Pfingsten testified regarding how she cared for Dorothy. Pfingsten explained that she drove Dorothy to meetings with Pinnacle Bank, meetings with lawyers, and medical appointments because Dorothy could no longer drive. In 2015, Pfingsten helped Dorothy move from her farmhouse to an assisted living facility. Dorothy was 91 years old at the time and suffered from blindness, diabetes, and some diminished cognitive capabilities due to her age. Pfingsten stated she was with Dorothy when she passed away on November 18, 2017.

Karen testified that she believed Pinnacle Bank committed a serious breach of trust by refusing to approve the proposed fifth amendment dated November 10, 2015, because Pinnacle Bank had approved the previous amendments without protest. Karen also testified regarding a series of audio recordings she made of herself and Dorothy. Karen explained she recorded everything because she wanted to make a memorial of the proceedings and to show that Dorothy understood and agreed to Karen's actions. The audio recordings include conversations between Karen and Dorothy, meetings Dorothy and Karen had with Bowman, and the creation and signing of power of attorney documents for Karen as well as a will for Dorothy giving Karen any property owned by Dorothy that was not in the Hunt Trust. Bowman did not know Karen was recording their meetings and did not consent to such recordings. Contrary to Karen's testimony that she was advocating for Dorothy, the audio recordings reveal several instances of Karen confronting

Dorothy regarding the alleged abuse in Karen's childhood. In these confrontations, Karen demands restitution from Dorothy and many of the recordings end with Dorothy weeping. In addition to these conflicts, other audio recordings include discussions about the Hunt Trust between Karen and Dorothy. In these discussions, Karen mischaracterizes the terms of the trust, attorneys, Pinnacle Bank, and the courts in general. In one recording of a meeting with Bowman, he admonishes Karen to stop berating her mother.

In an order dated October 30, 2020, the court denied Karen's petition, approved the settlement agreement between Dorothy and Pinnacle Bank which included the proposed fifth amendment dated April 15, 2016, and ordered the trust property to be distributed in accordance with the Hunt Trust and settlement agreement. Specifically, the court found that it was Karen who exercised undue influence over Dorothy in executing the original proposed fifth amendment dated November 10, 2015. The court further held that Pinnacle Bank was fulfilling its fiduciary duty as co-trustee by enforcing paragraphs 4.1 and 6.3 of the Hunt Trust and refusing to agree to Karen's proposed amendment. The court then retained jurisdiction pending further hearing on Pinnacle Bank and Randall's requests for attorney fees.

Despite the court's order retaining jurisdiction, Karen appealed. We summarily dismissed the appeal on January 5, 2021, finding that the appeal was prematurely filed prior to the resolution of matters pending before the court including motions for attorney fees. See *In re Trust of Hunt*, (No. A-20-842, Jan. 5, 2021). Karen then petitioned the Nebraska Supreme Court for further review. That petition was denied due to lack of jurisdiction.

A hearing on the motion for attorney fees was held on February 7, 2022. Daniel Werner, a longtime probate attorney in the area, testified as an expert witness. He opined that the hourly rate of $175 charged by the attorney for Pinnacle Bank and the hourly rate of $200 charged by the attorney for Randall was reasonable. Additionally, Werner testified that the amount of time each attorney worked on this case was reasonable given the issues presented. Affidavits from Randall and his attorney stated Randall had been charged a total of $20,310 in attorney fees for this case and included itemized billing statements. An affidavit from Pinnacle Bank's attorney stated he charged Pinnacle Bank a total of $28,768.15 for handling the defense of various petitions filed by Karen and also included itemized billing statements. The court accepted as evidence a copy of the bill of exceptions for all the previous proceedings and took judicial notice of the previous journal entries and orders.

In a written order dated April 14, 2022, the court noted that "every effort was made to give [Karen] and her counsel the benefit of the doubt regarding their intentions and their efforts." In giving Karen and her attorney the benefit of the doubt, the court found that "there must have been some basis for [Karen] to believe she had a valid claim to prosecute and a possible legal theory her attorney could press." The court then summarized the procedural history of the case observing that 18 months passed between the filing of Karen's first petition to remove Pinnacle Bank as trustee and the dismissal of that petition. That timeframe, according to the court, provided Karen and her attorney sufficient time to conduct discovery regarding Karen's allegations but presumably yielded no supporting evidence since Karen and her attorney chose to dismiss the pending petitions. Therefore, the court concluded, the filing of another petition four months later without any new evidence was in bad faith. Because of this, the court granted the motions for attorney fees in part, awarding $20,000 to Pinnacle Bank and $7,500 to Randall. The court ordered that Karen

- 6 -

and her attorney be held jointly and severally liable for the attorney fees. Karen then filed a motion to alter or amend the judgment, which was denied June 1, 2022.

Karen appeals.

## ASSIGNMENTS OF ERROR

Karen assigns that the county court erred in (1) dismissing the petition filed by Karen on February 16, 2018, (2) approving the settlement agreement and the proposed fifth amendment to the trust dated April 15, 2016, (3) retaining jurisdiction pending a hearing on attorney fees, (4) awarding attorney fees to Pinnacle Bank and Randall, and (5) overruling Karen's motion to alter or amend.

As it relates to Karen's assignment that the court erred in retaining jurisdiction pending a hearing on attorney fees, Karen has failed to provide any argument in her brief. We have long held that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). Because Karen has failed to specifically argue that the court erred in retaining jurisdiction, we will not consider this assignment of error.

## STANDARD OF REVIEW

Appeals involving the administration of trust are equity matters and are reviewable in an appellate court de novo on the record. *In re Margaret L. Matthews Revocable Trust*, 312 Neb. 381, 979 N.W.2d 259 (2022). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions concerning the matters at issue. *Id.* However, the court may give weight to the fact that the trial court heard and observed the witnesses and their manner of testifying, and accepted one version of the facts rather than the other. *Id.*

On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *White v. Kohout*, 286 Neb. 700, 839 N.W.2d 252 (2013).

## ANALYSIS

*Amendment to Hunt Trust.*

Karen alleges the court erred in denying her petition to remove Pinnacle Bank and approving the settlement agreement between Dorothy and the bank with their proposed fifth amendment to the Hunt Trust dated April 15, 2016. In support, she asserts that the proposed fifth amendment dated November 10, 2015, drafted by Dorothy and Karen is the clearest expression of Dorothy's wishes and that the settlement agreement was the product of undue influence. According to Karen, Pinnacle Bank exercised undue influence by refusing to approve the proposed fifth amendment dated November 10, 2015, and that further undue influence was exercised by Pinnacle Bank, Randall, and others by negotiating with Dorothy concerning the amendment. Both Randall and Pinnacle Bank assert that the court did not err in approving the settlement agreement because the evidence shows that it was Karen who exercised undue influence over Dorothy.

The elements necessary to warrant the rejection of a written instrument on the ground of undue influence are (1) that the person who executed the instrument was subject to undue influence, (2) that there was opportunity to exercise undue influence, (3) that there was a

disposition to exercise undue influence for an improper purpose, and (4) that the result was clearly the effect of such undue influence. *Malousek v. Meyer*, 309 Neb. 803, 962 N.W.2d 676 (2021). Because undue influence is often difficult to prove with direct evidence, it may be reasonably inferred from the facts and circumstances surrounding the actor: his or her life, character, and mental condition. *Id.* Mere suspicion, surmise, or conjecture does not warrant a finding of undue influence; instead, there must be a solid foundation of established facts on which to rest the inference of its existence. *Id.*

The county court found that Pinnacle Bank not only did not exert undue influence but was fulfilling its duty as co-trustee by denying the proposed fifth amendment to the Hunt Trust dated November 10, 2015. Further, the court found that the evidence revealed that it was Karen who had exercised undue influence over Dorothy. Upon our review, we find no error in the court's findings.

There is no evidence in the record that Pinnacle Bank, Randall, Pfingsten, or their attorneys exercised any undue influence over Dorothy. First, Pinnacle Bank was exercising its duty as trustee by following the directive of the original Hunt Trust. Paragraphs 4.1 and 6.3 gave Pinnacle Bank the authority to deny any request of the surviving grantor or a beneficiary under the trust. The purpose of this safeguard was to protect the surviving spouse from pressure from the beneficiaries. Specifically, William and Dorothy created the trust shortly after William entered into a settlement agreement with Karen in which he paid her $75,000 in cash and forgave $110,000 in loans. Evidence adduced at trial demonstrated that William and Dorothy foresaw that Karen may not be satisfied with this settlement and would approach Dorothy about further restitution. Their concerns were borne out by the events that transpired after William's death. To protect the trust property and other beneficiaries, the Hunt Trust provided the safeguard of assigning a co-trustee who was empowered to say no to such requests. By denying the proposed fifth amendment dated November 10, 2015, created at the request of Karen and Dorothy, Sutter acting on behalf of Pinnacle Bank was fulfilling the bank's duty as co-trustee under the terms of the trust.

In fulfilling that duty, the evidence shows that Pinnacle Bank exercised reasonable discretion and did not commit a serious breach of trust. Karen argues that because Pinnacle Bank approved the previous four amendments to the Hunt Trust without concern, it was a serious breach of trust to deny the proposed fifth amendment and enter into negotiations with Dorothy. However, this contention is not supported by any evidence. Sutter testified that while Pinnacle Bank did approve the previous four amendments, he did not simply rubberstamp the amendments. In approving each of the previous amendments, Pinnacle Bank reviewed them before signing off on the change. When the proposed fifth amendment dated November 10, 2015, came in, Sutter reviewed the amendment and chose not to approve it because he had several reasons to believe that it was the product of the exact kind of overreach that was safeguarded by paragraphs 4.1 and 6.3 in the trust document. Further, Sutter testified that when Dorothy came in to discuss the prior potential amendments to the Hunt Trust, he referred her to the attorney she was utilizing at that time. No Pinnacle Bank personnel drafted any of the prior trust amendments.

The evidence also shows that it was Bowman on behalf of Dorothy and at her request, who initiated the settlement negotiations. Bowman testified that he spoke to Dorothy after filing the proposed fifth amendment and the petition to remove Pinnacle Bank. At that time, he recognized that she wanted to find a resolution. He also recognized that Dorothy seemed to be distressed by the situation and wished to get away from Karen's pressure. After the negotiations, Bowman

testified he presented the settlement agreement to Dorothy. She accepted and signed the agreement. No evidence was presented that Bowman was incompetent or that he unduly influenced Dorothy. Rather, the evidence demonstrated that Dorothy was competently represented through the negotiations and fully accepted the settlement agreement. There is no evidence she was unduly influenced by Pinnacle Bank or others in reaching the settlement agreement.

Conversely, the evidence does support the court's finding that Karen exercised undue influence over Dorothy. In 2015, Dorothy was 91 years old and suffering from blindness, diabetes, and diminished cognitive capabilities. Bowman testified that in hindsight, he has "no doubt" Karen was influencing Dorothy in the creation of the proposed fifth amendment to the trust. This belief is supported by the audio recordings made by Karen and introduced into evidence by her. Several of the recorded conversations involve Karen berating and belittling Dorothy regarding Karen's belief that Dorothy owed her restitution. Many of these conversations concluded with Dorothy audibly weeping. Karen requested that Bowman draft the amendment to provide that she receive 75 percent of the trust assets, a request Bowman described as "classic undue influence." Additionally, Karen provided the vast majority of the information that led to the drafting of the proposed amendment. Only after the proposed amendment was drafted and the petition to remove Pinnacle Bank as trustee was filed did Dorothy have an opportunity to meet with her attorney outside of Karen's presence. It is clear from the evidence that Dorothy was attempting to appease Karen by amending the Hunt Trust to be more favorable to Karen. The court did not err by finding that Karen exerted undue influence over Dorothy, dismissing her petition, and approving the settlement agreement with the proposed fifth amendment dated April 15, 2016. Scarcely an iota of the evidence supported Karen's position that Pinnacle Bank or anyone other than Karen asserted undue influence. Karen's own evidence firmly established that Pinnacle Bank, through Sutter, conscientiously performed the duties required of it by the trust, and exerted no influence on Dorothy. Once Dorothy had the opportunity to converse with Bowman free of Karen, she was able to reach an agreement with Pinnacle Bank with the advice of counsel. That agreement, while not giving Karen all she wanted, still provided her with some benefit.

*Attorney Fees.*

Karen next assigns that the court erred in awarding attorney fees to Pinnacle Bank and Randall and overruling Karen's motion to alter or amend. We disagree.

Both Pinnacle Bank and Randall requested attorney fees pursuant to § 25-824, which provides in relevant part, that a

> court shall assess attorney's fees and costs if, upon the motion of any party or the court itself, the court finds that an attorney or party brought or defended an action or any part of an action that was frivolous or that the action or any part of the action was interposed solely for delay or harassment.

A lower court's decision to assess attorney fees for frivolous or bad faith litigation will be upheld absent an abuse of discretion. *Trausch v. Hagemeier*, 313 Neb. 538, 985 N.W.2d 402 (2023). "Frivolous" for the purposes of § 25-824 is defined as being a legal position wholly without merit, that is, without rational argument based on law and evidence to support a litigant's position in the lawsuit. *Trausch v. Hagemeier, supra*. Frivolous connotes an improper motive or legal position so

wholly without merit as to be ridiculous. *Id.* A court, at its discretion, may assess sanctions against the culpable parties and attorneys for claims or defenses which are frivolous or made in bad faith. *Id.*

The Supreme Court has explained that in determining the amount of a cost or an attorney fees award a court considers statutory factors, including, but not limited to, the following:

(1) The extent to which any effort was made to determine the validity of any action or claim before the action was asserted; (2) the extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses that have been found not to be valid; (3) the availability of facts to assist the party to determine the validity of a claim or defense; (4) the relative financial position of the parties involved; (5) whether or not the action was prosecuted or defended in whole or in part in bad faith; (6) whether or not issues of fact, determinative of the validity of a party's claim or defense, were reasonably in conflict; (7) the extent to which the party prevailed with respect to the amount of and number of claims in controversy; (8) the amount or conditions of any offer of judgment or settlement in relation to the amount or conditions of the ultimate relief granted by the court; (9) the extent to which a reasonable effort was made to determine prior to the time of filing of a claim that all parties sued or joined were proper parties owing a legally defined duty to the plaintiff or defendant; and (10) the extent of any effort made after the commencement of an action to reduce the number of parties in the action.

*Trausch v. Hagemeier*, 313 Neb. at 556, 985 N.W.2d at 417 (quoting Neb. Rev. Stat. § 25-824.01 (Reissue 2016)).

The county court carefully considered the statutory factors and provided Karen and her attorney the benefit of the doubt because any doubt as to whether a legal position is frivolous or taken in bad faith should be resolved in favor of the one whose legal position is in question. See *White v. Kohout*, 286 Neb. 700, 839 N.W.2d 252 (2013). The court concluded that Karen and her attorney had known or reasonably should have known that the third petition filed by Karen to remove Pinnacle Bank as co-trustee on February 16, 2018, was without merit, and therefore, filed in bad faith. As a result, the court awarded reasonable attorney fees of $20,000 to Pinnacle Bank and $7,500 to Randall for work done subsequent to the February 2018 filing.

The court's findings are supported by the record. Karen filed her first petition requesting Pinnacle Bank to be removed as trustee on April 21, 2016, and a second petition on June 22, 2017. No action was taken on the first petition until the court set a hearing to show cause why the first petition should not be dismissed for lack of prosecution. Subsequently, Karen and her attorney dismissed both petitions. Karen and her attorney had 18 months to complete discovery and find evidence in support of the petition. We agree with the county court that it can be assumed that discovery yielded no such evidence since the petitions were dismissed. Yet, four months later, Karen and her attorney chose to file yet another petition requesting Pinnacle Bank to be removed as co-trustee.

At trial, Karen and her attorney provided no evidence of undue influence from Pinnacle Bank, Randall, Pfingsten, or their attorneys. Instead, Karen and her attorney sought to establish that Pinnacle Bank exercised undue influence simply by refusing to approve the proposed fifth

amendment to the Hunt Trust dated November 10, 2015. This position is not supported by any established law, the terms of the trust document, or any facts adduced at trial. The court did not abuse its discretion in finding that it was bad faith for Karen to file her third petition in February 2018. We agree that Karen's action herein is frivolous.

The court also did not err in finding that Karen's attorney should be jointly and severally liable. While zealous advocacy is usually to be commended, it is also necessary for an attorney to know when to redirect an argument to protect his or her client or in some instances, to just say "no more." *Cedars Corp. v. Sun Valley Dev. Co.*, 253 Neb. 999, 1007, 573 N.W.2d 467, 473 (1998). In this instance, Karen's attorney had a duty to recognize that after 18 months of discovery, the facts did not support Karen's position that Pinnacle Bank committed any wrongdoing. Furthermore, Karen's attorney should have known that his client's position regarding undue influence was not supported by any established law. The evidence presented by counsel established that the only person who exerted undue influence on Dorothy was Karen. Ultimately, the filing of Karen's third petition can only be characterized as bad faith on the part of her attorney as well.

For the sake of completeness, we also find that the amount of attorney fees awarded to Pinnacle Bank and Randall was reasonable. Evidence presented at trial established that the hourly rate charged by each attorney was reasonable for civil litigation in the area, and the amount of time spent on this case was reasonable given the issues presented. The court restricted the fees awarded to address only the work done after the filing of Karen's third petition. The court did not abuse its discretion in awarding attorney fees to Pinnacle Bank and Randall.

CONCLUSION

For the foregoing reasons, we affirm the order of the county court denying Karen's petition to remove Pinnacle Bank as co-trustee and approving the proposed fifth amendment to the Hunt Trust dated April 15, 2016, and the order of the court awarding Pinnacle Bank and Randall attorney fees.

AFFIRMED.